LINUS L. BAKER KS 18197
6732 WEST 185TH TERRACE
STILWELL, KANSAS 66085
913.486.3913
LINUSBAKER@PRODIGY.NET
*Attorney for the plaintiff seeking*
*free speech, election integrity, transparent and open government*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **Jennifer Gilmore** | |
| Plaintiff | |
| v. | |
| **Joe Beveridge,** in his individual capacity<br>10023 Sunset Dr.<br>Lenexa, KS 66220<br>* | |
| **Brent Kiger,** in his individual capacity<br>6112 W 77th ST<br>Prairie Village, KS 66208<br>* | |
| **Jim McMullen**, in his individual capacity<br>24932 W. 112th CT<br>Olathe, KS 66061<br>* | |
| **Joe Beveridge,** in his official capacity, as board member of the Olathe Board of Education<br>14160 Black Bob Road<br>Olathe, KS 66063 | |
| Defendants | |

### COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND MONETARY DAMAGES 42 U.S.C. §§ 1983, 1988

### INTRODUCTION

1. Parents making comments at school board meetings have been characterized as

"domestic terrorists" by the current administration of the U.S. President. School

1

board members are emboldened to publicly disdain parent's comments at these meetings.https://www.yorkdispatch.com/story/opinion/contributors/2022/01/20/all-due-respect-no-dont-work-you/6591960001/ (an occasion "to tell board members why they have the collective intelligence of a village idiot…").  Covid 19 has morphed into Covid 1984.  The Olathe School District in Johnson County Kansas might use Orwell's 1984 as student literature or social commentary – but not as an instruction manual for how school board meetings are conducted. When Olathe's board member president Joe Beveridge, with the approval and acquiescence of his fellow board members, set out to censor citizens whose political views he despises, he holds little back. Beveridge and his board have purported to grant themselves the power to arbitrarily silence anyone speaking at school board meetings for vague personal reasons – really no reason at all other than they don't like it – and they have wielded it in unrepentant fashion.

2. Ironically, the defendants are tasked with educating children about the nature of our government's relationship with the people, and about Americans' basic civil rights, including the First Amendment rights to free speech and petition the government for a redress of grievances. Future Olathe students learning about civil rights may study the decision in this case. That decision should restore and secure the fundamental rights that these defendants have so thoroughly trampled.

3. This case concerns a linked series of actions in which the defendants used a variety of illegal and tortious tactics to suppress the plaintiff Jennifer Gilmore's right to freedom of speech, right to assemble, due process, and the right to equal protection.

Beveridge's actions directed at Jennifer Gilmore are part of a larger pattern of viewpoint discrimination in violation of the defendant's duties under the Kansas Bill of Rights and the First Amendment to the United States Constitution.

## THE PARTIES

4. Plaintiff Jennifer Gilmore ("Jennifer") is a natural person, citizen of Kansas, and legal resident of Johnson County, Kansas. Jennifer is also a natural parent of her child which is also a student in the Olathe school district.

5. Defendant Joe Beveridge ("Beveridge") is a natural person who was elected board member of the Olathe Board of Education. He is sued in his official and individual capacities.

6. Defendant Brent Kiger is a natural person and is employed by the Olathe School District as the Director of Safety Services. He is sued in his individual capacity.

7. Defendant Jim McMullen is a natural person and is employed by the Olathe School District as Assistant Superintendent of Middle School Education. He is sued in his individual capacity.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, and 1346, as this action challenges the defendants' violation of the plaintiff's civil rights pursuant to 42 U.S.C. § 1983.

9. Venue lies in this Court pursuant to 28 U.S.C. § 1391, as a substantial part of the event and omissions giving rise to the claims occurred in this judicial district. This Court retains jurisdiction over the case and controversy as all parties legally reside

or operate within Johnson County, Kansas, within the bounds of the District of Kansas, and are subject to service therein.

## STATEMENT OF FACTS

*Olathe's Censorship Policies and Practices*

10. Defendant Olathe School Board's official policy provides that the "general public shall be invited to attend all board meetings, except executive sessions." Policy Manual, Section B, Title "Public Participation" ("Policy").

11. The Manual states that "any patron wishing to speak to the board is encouraged to notify the clerk of the board five (5) days prior to the meeting and state the reason(s) for the request."

12. Jennifer ran for a board seat for the Olathe school board in 2021.

13. Jim Randall is an elected Johnson County Republican precinct committeeman who sent out an email to Cedar Creek neighbors advocating for his daughter (Democrat) Julie Steele (newly elected Olathe board member) claiming that Jennifer had received PAC money for her board campaign: that her goal was to privatize the public school system (which was not a goal of Jennifer when she ran for office).

14. Randall is the defendant Joe Beveridge's father-in-law.

15. During that campaign Olathe board member Shannon Wickliffe tweeted before the election "Liars Lie, I will never support a liar in my community" and posted a picture of a PAC that mailed a flyer contesting Critical Race Theory on behalf of a

conservative candidate slate for the board which included Jennifer in the 2021 elections.

16. Jennifer made a timely request to speak at the January 13, 2022, Olathe School board meeting and stated "community" as the reason for her request.

17. Members of the public who are allowed to speak at Olathe school board meetings are allotted the maximum of five minutes of speaking time.

18. The Manual states that the "board president may interrupt or terminate any individual's statement if it is disruptive, not germane to the business activities of the board, or in violation of Kansas Statutes regarding meetings or activities of the board."

19. The Manual states that the "board president may deny any individual speaking privileges if previous conduct of the individual has indicated that the orderly conduct of a meeting may be threatened by that person's appearance.   The president has the option to stop the proceedings and poll the board to determine if a speaker may continue." Given the occurrence of January 13, 2022, Jennifer is subject to this speaking privilege ban.

20. However, the Olathe Board has additional policies on this which is contained in its "PUBLIC PARTICIPATION REGISTRATION CARD" which also states "I have read and understand the above information" and requires a signature.

21. The Registration Card contains the same policy language but then adds two paragraphs of additional policies / conditions:

8. During an open session, the Board shall not hear personal attacks, or rude or defamatory remarks of any kind about any employee or student of the School

District or any person connected with the School District. The Board will also not accept public comments containing vulgar or obscene language. Any individual wishing to make a complaint about school personnel shall submit the complaint in writing to the Superintendent. If the complaint involves the Superintendent it shall be submitted in writing to the President of the Board.

9. The Board at its own discretion reserves the right to edit comments for broadcast that are deemed obscene, profane, defamatory, rude, or may violate federal broadcasting laws. Any member of the Board may request that all or a portion of the public comments be stricken from broadcast. The Board member shall identify with specificity which portion he or she would like to strike. This shall be submitted by motion to the Board for an up or down vote.

22. The Olathe School Board conducted on open regular meeting which was open to the public at times on January 13, 2022.  It was recorded and available for viewing at https://www.olatheschools.org/Page/2423; https://www.youtube.com/watch?v=1qf_07vq73A.

23. The meeting then went to its public comments section. The board recited its Manual requirements referenced above. The comments were limited to two ½ minutes.  The board requested that comments be directed to the entire board, and that "in an effort to respect privacy we ask that speakers refrain from discussing personnel personal complaints involving individual staff members or students."

24. A parent spoke first about masking and the Omicron variant.  She told the board they had "become an administration of insanity."

25. Another parent spoke next about "DEI" program and curriculum, "equity" and "equality." She spoke directly to an Olathe employee "John" in the audience regarding bonds and his printouts.

26. Jennifer spoke next. Jennifer wore a shirt that said "Tested Positive for Critical Thinking With My Old School Olathe Public Education." Jennifer's theme was similar to other parents in that she wanted to press the point that parents had lost

trust in the board.  She began stating "Good Evening, I didn't buy my board seat but I am still here because I care about this district." She then was interrupted by one of the board members. Jennifer said "please don't interrupt me." She continued: "We were told prior to enrollment mask would be optional. We are doing the same thing year after year. I agree, Liars Lie but that the only liar that lied in this election was Jim Randall."  This statement was in reference to Wickliffe's tweet and that Jennifer was not the "liar" because she, as a candidate, cannot coordinate with a Political Action Committee and further was unaware beforehand of the mailers that were sent out on her behalf. The phrase "buy an election" has long been in use and one news organization provided a flowchart, "So You Want to Buy an Election? (Flowchart) *Want to blow $10,000 – or $1 million – on the election? This flowchart will show you how*." https://www.motherjones.com/politics/2011/12/campaign-finance-flow-chart/

27. Beveridge then interrupted Jennifer and said "OK, you're done, you're done. Dr. McMullen remove her.  You're done, you're done"

28. Jennifer calmly asked "why?"  Beveridge said "you're done."

29. Jennifer serenely and incredulously asked "why am I done?" Beveridge repeatedly said "you're done." Jennifer calmly repeated "why am I done?"

30. In a civil tone Jennifer said she had a speech to the board but Beveridge interrupted her again saying "you're done." Each time Jennifer attempted to calmly talk Beveridge interrupted and spoke over her saying over and over "you are done."

31. Beveridge said it was "personal" and Jennifer said "not talking about anything personal." Beveridge said "you mentioned a person." Beveridge continued to raise his voice and was visibly upset.

32. Brent Kiger approached Jennifer and stood at the podium directly facing her with his back to the board indicating Jennifer was being required to leave.  Jennifer said it was your brother in law of your sister who is on the board that spent $37,000 dollars for her board seat."

33. At no time was Jennifer disruptive or disorderly and unlike Beveridge she did not raise her voice.  And while Jennifer did not believe what Beveridge was doing was lawful, she complied with Beveridge's unlawful order to leave.

34. Beveridge was visibly upset and then said "I would like to take a five minute break. Does anyone have an objection to that?  OK, we are going to take a five minute break." Beveridge later stated he had "zero misgivings about my decision" that he would not allow anyone at the public comments to "attack family members of the board of education." Beveridge stated that as long as he was board president, "no one will attack family members of any of our board members during public comments."

35. During the break Beveridge said to the board "should I have done that?"  No board member responded to Beveridge's question.

36. After the break a parent spoke. She spoke on the mask issue. She also referred to a teacher who refused to greet her child because the child did not wear a mask for medical reasons. She told the board that the one size fits all policy was not ethical.

37. Another parent whose shirt said "disgruntled parent" spoke and called the board's prior actions "political games."  Another parent spoke and suggested the current board policy was only a one way street – from speaker to board – and instead needed to be a dialogue. The speaker also mentioned critical race theory.

38. Another speaker (with a "disgruntled parent" shirt) accused the board of colluding with the county and repeatedly referenced things the board did as "political cover." The speaker said "don't ask us to trust you because we don't."

39. The speaker said "don't troll parents online calling us liars while participating in lying to the electorate."

40. There were other speakers who spoke positively of the board.  All of the speakers except for Jennifer were allowed to speak without interruption.

41. Jennifer was escorted by the defendant Kiger to her chair and picked up her belongings and then was made to go out into the building hallway by the defendant Kiger and defendant Jim McMullen.

42. When Jennifer went into the hallway they told her she was required to leave the building.

43. Jennifer refused initially, said "no," that it was a public meeting.  She told them she intended to go back in the meeting without demanding to speak.  Jennifer told them she complied with Beveridge's command to stop speaking but that they were also not entitled to remove Jennifer from the meeting. Kiger and McMullen said they would ask Beveridge if he wanted her removed from the podium, meeting, or the building.

44. McMullen returned and told Jennifer that Beveridge was instructing them to have her removed from the building.  There were also two Olathe Police Officers watching this discussion.

45. Jennifer left the building under the instructions of Kiger, McMullen, and Beveridge and told Kiger and McMullen that they were violating her rights.  They responded by saying it was Beveridge who was having her removed from the building.

46. According to YOUTUBE, there have been 5,103 views of Beveridge's confrontation with Jennifer and her censorship removal from the podium.

47. No one, including Beveridge, ever explained to the crowd or to Jennifer why she was not only being prohibited from further speaking but in being required to leave the building.

48. Beveridge made no allegation to Jennifer or to the Board that any action(s) or conduct by Jennifer, other than the content of her speech, was a factor in the defendants' ban, censorship, or public condemnation of her.

49. During her entire comment period, the plaintiff Jennifer spoke from the podium provided for the purpose. She was not seen or accused of making any improper gestures or taking any physical actions whatsoever other than standing at the podium and speaking normally.

50. At no time did Jennifer do anything notable other than engage in citizen topical protected speech within a designated public forum.

51. The plaintiff Jennifer did not exceed her allotted time for her comments and in fact was not allowed to finish any of her comments.

52. As can be verified from the video record of the meeting, at no time did Jennifer's remarks include any threat or solicitation of violence, any confidential or privileged information, any fighting words or verbal invective, any obscenity, any vulgarity, or even any significant material not topical to the matter under consideration.

53. What Plaintiff's remarks did include were conclusions, beliefs, and opinions about a public and political figure who was not an Olathe board member, and was not an employee of the Olathe School district.

54. Each individual board member was well-aware of the censorship occurring in his or her presence, acquiesced in it, endorsed Beveridge's censorship and punishment of Jennifer as a reaction to her speech.

55. While Beveridge allowed one speaker to specifically accuse an Olathe teacher of discrimination against her child ("teacher who refused to greet her child because the child did not wear a mask for medical reasons) and allowed other speakers to call him and the other board members an "administration of insanity," not being "ethical," and "lying to the electorate," he would not allow Jennifer's comments about a public figure who was not a board member or employee of the Olathe school district.

56. Jennifer intends to return to the public meetings of the Olathe School board but fears that she will again be subjected to censorship, punishment, and reputational

injury. The arbitrary speech restrictions, as written and as applied, chills Jennifer's expression.

COUNT ONE

RIGHT OF FREE SPEECH, U.S. CONST. AMENDS. I, XIV, 42 U.S.C. § 1983
FACIAL CHALLENGE TO OLATHE'S PUBLIC FORUM SPEECH CONTENT

57. Plaintiff realleges and incorporate by reference the paragraphs 1 through 56.

58. The First Amendment embodies "a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964). The government may not silence speech because it criticizes government officials or employees, or their favorite ideas or initiatives, even if that speech does so in ways that many people may find unpleasant. Allegations of hurt feelings, real or spurious, do not justify censorship of public speech.

59. The Kansas Bill of Rights and the U.S. Constitution's First Amendment protections extend to public speech at the defendants' school board meetings, by state law and the operation of the Fourteenth Amendment.

60. Olathe Board meetings constitute a "limited public forum." *Pleasant Grove City v. Summum,* 555 U.S. 460, 470 (2009). In a limited public forum, the government may "regulate features of speech unrelated to its content" through "time, place, or manner" restrictions. *McCullen v. Coakley*, 573 U.S. 464, 477 (2014).

61. The government may also impose content-based restrictions, such as those reserving the forum "for certain groups or for the discussion of certain topics," *Rosenberger v. Rector & Visitors of Univ. of Va.,* 515 U.S. 819, 829 (1995), so long as they "are reasonable in light of the purpose served by the forum and are viewpoint neutral," *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.,* 473 U.S. 788, 806 (1985). But the government may not engage in a more invidious kind of content discrimination known as viewpoint discrimination. *Matal v. Tam*, 137 S. Ct. 1744 (2017); *Iancu v. Brunetti*, 139 S. Ct. 2294 (2019) ("Disfavoring ideas that offend discriminates based on viewpoint, in violation of the First Amendment"); *Am. Freedom Def. Initiative v. Suburban Mobility Auth. for Reg'l Transp.*, 978 F.3d 481, 491 (6th Cir. 2020).

62. It is axiomatic that criticism of political public figures, school officials, school employees, school rules and regulations, school budgets, and school curricula are germane to the business of school boards – regardless of whether school board members want to hear such criticism or believe that it is fair. "Giving offense is a viewpoint." *Matal v. Tam* at 1763. The First Amendment prohibits the exclusion of these viewpoints from public speech at school board meetings, regardless of the meeting's forum classification.

63. The defendant School Board impose facially-unconstitutional restrictions on the speech of the plaintiff and others.

64. Olathe Policy's prohibitions on speech deemed "personal attacks, or rude or defamatory remarks" regarding "any person connected with" the School District,

"vulgar" "profane," "rude," or "complaint" and "business activities of the Board" violate the First Amendment right of free speech on their face by impermissibly discriminating against speech on the basis of content and viewpoint. The provision "previous conduct of the individual has indicated that the orderly conduct of a meeting may be threatened by that person's appearance" also violates Free Speech. The policies prohibit all speech regarding any "complaint" against any school employee. These prohibitions are not designed to confine the forum to the limited and legitimate purposes for which it was created, but rather, to suppress ideologies and opinions respecting matters properly before the school board with which Defendants disagree. *See Ison v. Madison Loc. Sch. Dist. Bd. of Educ.,* 3 F.4th 887, 894 (6th Cir. 2021) (The Policy terms ("abusive" and "personally directed") "prohibit speech purely because it disparages or offends").

65. The policy vests unbridled discretion in the School Board and its President to define and apply these vague terms. *See Minnesota Voters All. v. Mansky*, 138 S. Ct. 1876, 1891 (2018) ("that discretion must be guided by objective, workable standards" to avoid the moderator's own beliefs shaping his or her "views on what counts" as a policy violation).

66. In the alternative, if Olathe school board meetings are nonpublic fora, the policy prohibitions on speech deemed "personal attacks, or rude or defamatory remarks" regarding "any person connected with" the School District, "vulgar" "profane," "rude," "complaint" or "business activities of the Board" also violate the First Amendment right of free speech on their face because they are not reasonable

regulations that advance the meetings' purposes, but rather serve only to suppress officially disfavored views.

67. To the extent that Olathe policy prohibitions policy prohibitions on speech deemed "personal attacks, or rude or defamatory remarks" regarding "any person connected with" the School District, "vulgar" "profane," "rude," "complaint" or "business activities of the Board" serve any legitimate function, these are substantially overbroad in violation of the First Amendment right of free speech.

68. By enforcing these provisions, the defendants, under color of law, deprive the plaintiff of the right to free speech in violation of the First and Fourteenth Amendments to the United States Constitution. Plaintiff is thus damaged in violation of 42 U.S.C. § 1983, and are therefore entitled to damages; declaratory and preliminary and permanent injunctive relief against continued enforcement and maintenance of the defendants' unconstitutional customs, policies, and practices; and attorney fees and expenses pursuant to 42 U.S.C. § 1988.

COUNT TWO
RIGHT OF FREE SPEECH, U.S. CONST. AMENDS. I, XIV, 42 U.S.C. § 1983
AS-APPLIED CHALLENGE TO PENNSBURY POLICY 903, SPEECH CONTENT

69. Plaintiff realleges and incorporate by reference paragraphs 1 through 68.

70. All of the plaintiff's public speech at the Olathe school board meeting that the defendants have censored is fully protected by the First Amendment right to free speech. All of the plaintiff's public speech at the Olathe school board meeting that the defendants have censored was germane to the school board's activities or "business." At no point did any of the defendants terminate or censor plaintiff

15

Jennifer's speech on the basis of time, obscenity, or lack of decorum. Rather, the defendants censored her speech because they disagreed with it.

71. As-applied against the plaintiff, the defendants' policy prohibitions on speech deemed an "attack" on "family members" of the board, "personal attacks, or rude or defamatory remarks" regarding "any person connected with" the School District, "vulgar" "profane," "rude," "complaint" or "business activities of the Board" violated and continue to violate the plaintiff's First Amendment right of free speech by impermissibly discriminating against her speech on the basis of its content and viewpoint. Should Olathe's school board meetings be deemed nonpublic fora, these prohibitions were and are not employed as reasonable regulations that advance the meetings' purposes, but rather serve only to suppress disfavored speech.

72. In violating the plaintiff's First Amendment rights, the individually named defendants have acted in a manner that was reckless, callous, intentional, or malicious. Beveridge has singled out this plaintiff for her views, conspired to target her speech, and aggressively censored her in an angry and emotional manner that evinces a profound hostility to the plaintiff's well-established First Amendment rights.

73. By enforcing these provisions against the plaintiff, each defendant, under color of law, deprived and continue to deprive the plaintiff of the right to free speech in violation of the First and Fourteenth Amendments to the United States Constitution. Plaintiff is thus damaged in violation of 42 U.S.C. § 1983, and is therefore entitled to damages, including punitive damages; declaratory and

16

preliminary and permanent injunctive relief against continued enforcement and maintenance of the defendants' unconstitutional customs, policies, and practices; and attorney fees and expenses pursuant to 42 U.S.C. § 1988.

COUNT THREE
RIGHT TO PETITION, U.S. CONST. AMENDS. I, XIV, 42 U.S.C. § 1983
FACIAL CHALLENGE TO OLATHE'S POLICY, SPEECH CONTENT

74. Plaintiffs reallege and incorporate by reference paragraphs 1 through 73.

75. "The right to petition the government is one of the most precious of the liberties safeguarded by the Bill of Rights." *BE & K Constr. Co. v. NLRB,* 536 U.S. 516, 524 (2002). The very idea of a government, republican in form, implies a right on the part of its citizens to meet peaceably for consultation in respect to public affairs and to petition for a redress of grievances. *McDonald v. Smith*, 472 U.S. 479, 486 (1985).

76. Petitioning serves numerous, fundamental interests of petitioners and the government alike. It is essential to freedom, liberty and self-government. Petitions contribute to the public airing of disputes, the evolution of the law, and the use of government as an alternative to force. *BE & K Constr.*, 536 U.S. at 532.

77. "A petition may undoubtedly consist of a personal grievance addressed to the government. But petitions to the government assume an added dimension when they seek to advance political, social, or other ideas of interest to the community as a whole. A petition … may include an oral grievance." *Mirabella v. Villard*, 853 F.3d 641, 654 (3d Cir. 2017).

78. Public comment periods at school board meetings are fora whose purpose, in large part, is to enable people to exercise their fundamental First Amendment right of petition.

79. The defendants' policy prohibitions on speech deemed "personal attacks, or rude or defamatory remarks" regarding "any person connected with" the School District, "vulgar" "profane," "rude," "complaint" or "business activities of the Board" violate the First Amendment right to petition on their face by impermissibly prohibiting and limiting petitions on the basis of content and viewpoint. These prohibitions are not designed to confine the forum to the limited and legitimate purposes for which it was created, but rather, to suppress petitions for redress, respecting matters properly before the school board, when the defendants disagree with the petitions and do not wish to have their authority or judgment challenged, and do not wish to have aired any dissenting viewpoints to their rule.

80. In the alternative, if Olathe 'school board meetings are nonpublic fora, defendants' policy prohibitions on speech deemed "personal attacks, or rude or defamatory remarks" regarding "any person connected with" the School District, "vulgar" "profane," "rude," "complaint" or "business activities of the Board" also violate the First Amendment right of petition on their face because they are not reasonable regulations that advance the meetings' purposes, but rather serve only to suppress officially disfavored petitions.

81. To the extent the policy serves any legitimate function, these are substantially overbroad in violation of the First Amendment right of petition. By enforcing these

provisions, the defendants, under color of law, deprive the plaintiff of her right to petition in violation of the First and Fourteenth Amendments to the United States Constitution. Plaintiff is thus damaged in violation of 42 U.S.C. § 1983, and is therefore entitled to damages; declaratory and preliminary and permanent injunctive relief against continued enforcement and maintenance of the defendants' unconstitutional customs, policies, and practices; and attorney fees and expenses pursuant to 42 U.S.C. § 1988.

COUNT FOUR
RIGHT TO PETITION, U.S. CONST. AMENDS. I, XIV, 42 U.S.C. § 1983
AS-APPLIED CHALLENGE TO OLATHE'S POLICY, SPEECH CONTENT

82.  Plaintiff realleges and incorporates by reference paragraphs 1 through 81.

83. All of Plaintiff's public speech at the Olathe school board meeting that the defendants have censored is fully protected by the First Amendment right to petition the government for a redress of grievances.

84. As-applied against the plaintiff, Olathe's policy prohibitions on speech deemed "attack" on "family members" of the board, "personal attacks, or rude or defamatory remarks" regarding "any person connected with" the School District, "vulgar" "profane," "rude," "complaint" or "business activities of the Board" violated and continue to violate the plaintiff's First Amendment right to petition by impermissibly discriminating against her petition on the basis of its content and viewpoint. Should Olathe school board meetings be deemed nonpublic fora, these prohibitions were and are not employed as reasonable regulations that advance the meetings' purposes, but rather serve only to suppress disfavored petitions.

85. By enforcing these provisions against the plaintiff, each defendant, under color of law, deprived and continue to deprive the plaintiff's right to petition in violation of the First and Fourteenth Amendments to the United States Constitution. Plaintiff is thus damaged in violation of 42 U.S.C. § 1983, and is therefore entitled to damages, including punitive damages; declaratory and preliminary and permanent injunctive relief against continued enforcement and maintenance of the defendants' unconstitutional customs, policies, and practices; and attorney fees and expenses pursuant to 42 U.S.C. § 1988.

COUNT FIVE
VAGUENESS, U.S. CONST. AMENDS. I, XIV, 42 U.S.C. § 1983
OLATHE POLICY

86. Plaintiff realleges and incorporates by reference paragraphs 1 through 85.

87. As notice is the first element of due process, the Fourteenth Amendment guarantee of Due Process prohibits the enforcement of vague laws. The First Amendment likewise forbids the enforcement of laws that, however valid their application may be in some instances, are so vague as to chill protected speech.

88. The Olathe Board publishes a policy, then adds to that policy, not through publication, but through other means. It adds to the policy in the speaker request then adds again when reading additional terms at the meeting ("personnel personal complaints involving individual staff members or students").

89. The conditions imposed by the defendant School Board are vague because they are irreparably clothed in subjectivity. The subjective idea of "appearance" ("previous conduct of the individual has indicated that the orderly conduct of a meeting may be threatened by that person's appearance") is completely without a

standard or meaning. "Personnel personal complaints," "personal attacks, or rude or defamatory remarks" regarding "any person connected with" the School District, "vulgar" "profane," "rude," "complaint" or "business activities of the Board" are each unduly vague, serving only to authorize the defendants' arbitrary censorship of speech they dislike.

90. By enforcing these provisions, each defendant, under color of law, deprives the plaintiff of her right to free speech in violation of the First and Fourteenth Amendments to the United States Constitution. Plaintiff is thus damaged in violation of 42 U.S.C. § 1983, and is therefore entitled to damages; declaratory and preliminary and permanent injunctive relief against continued enforcement and maintenance of the defendants' unconstitutional customs, policies, and practices; and attorney fees and expenses pursuant to 42 U.S.C. § 1988.

## COUNT SIX
## VIOLATION OF KANSAS OPEN MEETINGS ACT

91. Plaintiff realleges and incorporates by reference paragraphs 1 through 90.

92. The defendant School Board conducted a meeting on January 13, 2022, that was subject to the Kansas Open Meetings Act (KOMA).

93. The plaintiff is a member of the public and the School Board is a public agency as defined under KOMA.

94. The plaintiff attended the meeting on January 13, 2022, but was then improperly excluded by the defendants. It ceased being an open meeting to the public.

95. Each defendant violated KOMA by closing the meeting to the plaintiff or otherwise prohibiting her from remaining in the meeting.

96. Pursuant to KOMA, the burden is upon each defendant to demonstrate the public

agency acted in good faith and with a reasonable basis in law.

PRAYERS FOR RELIEF

WHEREFORE, the plaintiff requests that judgment be entered in her favor

and against each defendant as follows:

1. An order permanently enjoining defendants, their officers, agents, servants,

employees, and all persons in active concert or participation with them who receive

actual notice of the injunction, from enforcing:

a. Olathe School Board policy regarding an "attack" on "family members" of the board,

"previous conduct of the individual has indicated that the orderly conduct of a

meeting may be threatened by that person's appearance," "personnel personal

complaints," "personal attacks, or rude or defamatory remarks" regarding "any

person connected with" the School District, "vulgar" "profane," "rude," "complaint" or

"business activities of the Board."

2. Declaratory relief consistent with the injunction, to the effect that Olathe School

Board Policy with its speech prohibitions described above are unconstitutionally void

and unenforceable as they violate the First Amendment rights of free speech and

petition, and the Fourteenth Amendment's guarantee of due process against vague

laws; declaring that the public agency Olathe School Board violated KOMA.

3. An award of nominal damages to the plaintiff;

4. Against each defendant an award of punitive and exemplary damages to the

plaintiff;

5. Cost of suit, including attorney fees and costs pursuant to 42 U.S.C. § 1988; and

6. All of the relief available under KOMA including attorney fees and any other relief as the Court deems just and appropriate.

Dated: January 23, 2022

/s/Linus L. Baker
Linus L. Baker, KS 18197
6732 West 185th Terrace
Stilwell, KS  66085-8922
Telephone:  913.486.3913
Fax:            913.232.8734
E-Mail: linusbaker@prodigy.net
Attorney for the plaintiff