IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JENNIFER GILMORE,

      Plaintiff,

      v.

JOE BEVERIDGE, in his individual
capacity and official capacity as board
member of the Olathe Board of Education,
et al.,

      Defendants.

Case No. 22-2032-HLT-RES

## MEMORANDUM AND ORDER

This is a civil rights case regarding conduct at the January 13, 2022 meeting of the Olathe

Public Schools' Board of Education.  Plaintiff Jennifer Gilmore ("Gilmore") is suing Defendant

Joe Beveridge ("Beveridge"), in his individual capacity and in his official capacity as a school

board member, and other individuals.  This matter is now before the Court on Defendant

Beveridge's motion for leave to file an amended answer.  ECF No. 16.  Gilmore opposes the

motion.  For the reasons explained below, the motion is granted.

I.      **BACKGROUND**

Highly summarized, Gilmore alleges violations of her constitutional rights after she

purportedly was stopped from speaking at the January 13, 2022 meeting of the Olathe Public

Schools' Board of Education pursuant to the Board's policies.  *See generally* ECF No. 1.  Gilmore

brings claims under 42 U.S.C. § 1983 against: Defendant Beveridge, an elected member of the

Olathe Board of Education, in his individual and official capacities; Defendant Brent Kiger

("Kiger"), the school district's director of safety services, in his individual capacity; and Defendant

Jim McMullen ("McMullen"), the school district's assistant superintendent of middle school

education, in his individual capacity.  *Id.* at 3, ¶¶ 5-7.  She alleges that the Board of Education's

policies, both on their face and as applied, violate her free speech rights and right to petition as

guaranteed by the First and Fourteenth Amendments and that the policies are unconstitutionally

vague, thereby violating her due process rights and depriving her of her free speech rights (Counts

I-V).  *Id.* at 12-21, ¶¶ 57-90.  She also asserts a violation of the Kansas Open Meetings Act (Count

VI).  *Id.* at 21, ¶¶ 91-96.

This case is in its early stages, and Defendant McMullen has not yet appeared.  Beveridge

filed his original answer on February 14, 2022.  ECF No. 7.  On March 21, 2022, Kiger filed a

motion to dismiss asserting, among others, that Kiger is entitled to qualified immunity as to all

claims against him in his individual capacity.  *See* ECF No. 13 at 10.  Four days later, on March

25, 2022, Beveridge filed a motion and three-page supporting memorandum seeking leave to file

an amended answer asserting the defenses of qualified immunity and Eleventh Amendment

immunity, which were not included in his original answer.  ECF Nos. 16-17.  On March 25, 2022,

Gilmore filed a three-page opposition to the motion.  ECF No. 18.  On April 4, 2022, Beveridge

filed a four-page reply.  ECF No. 20.  That motion to amend is now before the Court.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 15(a) provides that unless an amendment is allowed as a

matter of course, "a party may amend its pleading only with the opposing party's written consent

or the court's leave."  Fed. R. Civ. P. 15(a)(2).  The Rule further instructs that courts should "freely

give leave when justice so requires."  *Id.*  "The purpose of the Rule is to provide litigants the

maximum opportunity for each claim to be decided on its merits rather than on procedural

niceties."  *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (internal quotations

omitted).  A court may deny a motion to amend on the grounds of "undue delay, bad faith or

dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of [the] amendment." *Hasan v. AIG Prop. Cas. Co.*, 935 F.3d 1092, 1101-02 (10th Cir. 2019) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

## III.   DISCUSSION

Gilmore focuses on the sufficiency of Beveridge's proposed defenses, which the Court interprets as a futility argument.  Gilmore does not raise any other argument regarding why the Court should deny the motion.  As explained below, the Court cannot find futility based on the limited present record.

### A.   Rule 15 Standard

Gilmore does not contend—and the Court does not find—that Beveridge has unduly delayed, exhibited bad faith or a dilatory motive, failed to cure deficiencies by prior amendments, or, that Gilmore would be unduly prejudiced by allowing the amendment.  *See Hasan* 935 F.3d at 1101-02 (explaining grounds to deny a motion to amend under Rule 15).  Indeed, Beveridge's motion is timely because he filed the motion at the pleadings stage, prior to any discovery having taken place and prior to the entry of a scheduling order establishing a deadline for amendments to the pleadings.  Timeliness is closely related to undue prejudice.  *Minter*, 451 F.3d at 1205.

Because this case is in the early stages, Gilmore is not prejudiced by allowing Beveridge to amend to assert defenses omitted from his recently filed answer.  This is significant because undue prejudice is the most important factor when deciding whether to allow amendment to the pleadings.  *Id.* at 1207-08 ("Rule 15 . . . was designed to facilitate the amendment of pleadings except where prejudice to the opposing party would result." (quoting *United States v. Hougham,*

364 U.S. 310, 316 (1960)).   Against this backdrop, the Court evaluates the only remaining argument to deny the motion—futility.

### B.    Futility

Gilmore argues that Beveridge's proposed defenses are unavailable to him, which the Court construes as a futility argument.   Courts may find a proposed defense is futile if it would not survive a motion to strike under Rule 12(f).  *Layne Christensen Co. v. Bro-Tech Corp.*, No. 09-CV-2381-JWL-GLR, 2011 WL 3847076, at \*6 (D. Kan. Aug. 29, 2011).   That rule allows the court to strike "insufficient defenses[.]"  Fed. R. Civ. P. 12(f).   Motions to strike are disfavored and should only be granted if a defense cannot succeed under any circumstance.  *See Fed. Trade Comm'n v. Superior Prod. Int'l II, Inc.*, No. 22-CV-02366-HLT-GEB, 2020 WL 7480390, at \*2 (D. Kan. Dec. 18, 2020) (characterizing Rule 12(f) motions as "disfavored" and noting that an affirmative defense is insufficient "if it cannot succeed, as a matter of law, under any circumstances." (internal quotations omitted)); *see also Hemlock Semiconductor Operations, LLC v. SolarWorld Indus. Sachsen GmbH*, 867 F.3d 692, 697 (6th Cir. 2017) ("Although motions to strike are viewed with disfavor, such motions are properly granted when plaintiffs would succeed despite any state of the facts which could be proved in support of the defense.") (internal quotations and brackets omitted); *United States v. Renda*, 709 F.3d 472, 479 (5th Cir. 2013) ("Striking an affirmative defense is warranted if it cannot, as a matter of law, succeed under any circumstance.").

Plaintiff, as the party opposing a motion to amend on futility grounds, bears the burden to establish the futility of the amendment.  *Hills v. Arensdorf*, No. 20-4037-EFM, 2020 WL 12967771, at \*1 (D. Kan. Dec. 1, 2020).   When the futility analysis implicates a Rule 12(f) analysis, the party opposing the amendment faces a demanding burden.  *Layne Christensen*, 2011

4

WL 3847076, at *6.  "Even when striking a defense is warranted, the Court may grant leave to amend to address the insufficiency."  *Id.*

Gilmore argues that Beveridge's affirmative defenses of qualified immunity and Eleventh Amendment immunity are both insufficient—but for different reasons.  *First*, as to Beveridge's proposed qualified immunity defense, Gilmore argues that Beveridge is not entitled to qualified immunity for essentially the same reasons that Gilmore contends (in response to a motion to dismiss) that Kiger is not entitled to qualified immunity.  *See, e.g.,* ECF No. 15 (Gilmore's memorandum in opposition to Kiger's motion to dismiss).  *Second*, Gilmore argues that Eleventh Amendment immunity does not apply to any official-capacity claim against Beveridge because he is not a state actor or to any individual-capacity claim against Beveridge as a matter of law.  In both cases, the Court finds that Gilmore has not carried her burden to establish futility of either proposed affirmative defense.

### 1.    Beveridge's Proposed Qualified Immunity Defense

Gilmore does not attack the sufficiency of how Beveridge pleads the proposed qualified-immunity defense, which states that Beveridge "is entitled to qualified immunity because plaintiff's constitutional rights were not violated and her rights were not clearly established at the time of the alleged violation." ECF No. 17-1 at 12, ¶ 14.  Rather, Gilmore cites case law addressing the analysis of this issue in the context of a Rule 12(b)(6) motion to dismiss. *See* ECF No. 18 at 2.  When evaluating qualified immunity in the 12(b)(6) context, "the Court considers the defendant's conduct as alleged in the complaint and determines whether the facts alleged assert a constitutional violation and whether the right was clearly established." *Martley v. Basehor, Kansas*, 537 F. Supp. 3d 1260, 1267 (D. Kan. 2021) (citing *Myers v. Brewer*, 773 F. App'x 1032, 1036 (10th Cir. 2019) and noting that the issue is "typically asserted at the summary-judgment

stage").   In other words, "[o]nce a defendant asserts qualified immunity, the plaintiff must show

that: (1) the defendant's actions violated a constitutional right and (2) the constitutional issue was

clearly established at the time of the defendant's actions."  *Id.* (citing *Medina v. Cram*, 252 F.3d

1124, 1128 (10th Cir. 2001)).

Plaintiff cites *Van Deelen v. Johnson*, 497 F.3d 1151, 1155-56 (10th Cir. 2007), which

discusses the elements of a claim for unlawful retaliation by government officials in response to

an individual exercising First Amendment rights.  *See id.*   But Gilmore's arguments in her

opposition brief on this point are a formulaic recitation of the *Van Deelen* elements without any

specific discussion of how the facts pleaded in her complaint show that Beveridge violated her

constitutional rights.[1]  Moreover, she largely ignores the second prong of the analysis: whether the

---

[1] As *Van Deelen* states:

> To make out a claim of unlawful retaliation by government officials
> in response to the exercise of his or her First Amendment right to
> petition, we have indicated three elements must be present. The
> plaintiff must show that (a) he or she was engaged in constitutionally
> protected activity; (b) the defendant's actions caused the plaintiff to
> suffer an injury that would chill a person of ordinary firmness from
> continuing to engage in that activity; and (c) the defendant's adverse
> action was substantially motivated as a response to the plaintiff's
> exercise of constitutionally protected conduct.

497 F.3d at 1155.  In her response brief, Gilmore has parroted the elements set out in *VanDeelen*
without any further discussion:

> The plaintiff has pled retaliatory actions by Beveridge when he
> expelled Gilmore from the meeting and then from the building.
> Gilmore has pled she was engaged in constitutionally protected
> activity; (2) defendants' actions caused plaintiff to suffer an injury
> that would chill a person of ordinary firmness from continuing to
> engage in that activity; and (3) plaintiff's exercise of constitutionally
> protected conduct substantially motivated defendants' adverse
> action.

ECF No. 18 at 2.

right was clearly established at the time.  To the extent she believes *Van Deelen* shows as much,

she does not explain why in her opposition brief.  *See generally Martley*, 537 F. Supp. 3d 1268

(noting that the clearly established prong is not met merely by citing to *Van Deelen* when the

alleged conduct at issue is not the same).  Ultimately, it is her burden to do so.  *Id.* (citing cases

and noting plaintiff's burden "to come forward with authorities demonstrating that the violative

nature of the conduct at issue is clearly established"); *see also Heard v. Dulayev*, --- F.4th ---, 2022

WL 905105, at *5 (10th Cir. 2022) ("Under this demanding standard, the alleged violation must

have a sufficiently clear foundation in then-existing precedent—either controlling authority or a

robust consensus of cases of persuasive authority." (internal quotations and brackets omitted)).

Based on the brief and limited arguments on the present record, Gilmore has not shown futility as

to the proposed qualified immunity defense.  To be clear, the Court is not ruling on the merits of

that issue or predicting how the District Judge may ultimately decide the matter.  The Court simply

finds that at this stage, Beveridge is entitled to plead the defense.

This outcome also makes practical sense given that Gilmore herself characterizes the

defense as being subject to the same analysis currently before the District Judge in the briefing on

Kiger's motion to dismiss on qualified-immunity grounds.  Indeed, Gilmore's response to the

motion to dismiss also relies on *Van Deelen*.  *See* ECF No. 15 at 9.  Courts have declined to find

futility based on arguments that overlap with a pending dispositive motion, or where the issue is

better resolved through dispositive motion briefing.  *See, e.g., McMahon v. PetroChoice Dynamo,*

*LLC*, No. 21-1002-DDC, 2021 WL 1663981, at *2 (D. Kan. Apr. 28, 2021) (declining to consider

arguments on a motion to amend that were entwined with issues raised in a pending motion to

dismiss); *see also Delta Pegasus Mgmt., LLC v. NetJets Sales, Inc.*, No. 2:21-CV-00393, 2021 WL

6087707, at *3 (D. Utah Dec. 23, 2021) ("[I]t is within the court's discretion to decline to engage

in a futility analysis in the context of a motion to amend if the court determines the futility arguments would be more properly addressed in dispositive motions.").  Allowing Beveridge to plead the defense and then address the matter in dispositive motion briefing is particularly appropriate here, when a codefendant's pending motion to dismiss relies on the same defense.

### 2.    Beveridge's Proposed Eleventh Amendment Immunity Defense

Gilmore next argues that Beveridge's Eleventh Amendment immunity defense is futile because *first*, Beveridge is not a state actor, and *second*, Eleventh Amendment immunity does not apply to the individual-capacity claims.  In both instances, the Court finds Gilmore has not carried her burden on the present record to show the defense would not survive a Rule 12(f) motion to strike and that allowing the amendment asserting the defense would be futile as a matter of law.

As to Gilmore's first argument, absent waiver or congressional override, "the Eleventh Amendment bars a damages action against a State in federal court."  *Kentucky v. Graham*, 473 U.S. 159, 169 (1985).  Eleventh Amendment immunity extends to suits seeking to recover monetary damages from state actors acting in their official capacities.  *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997) (Eleventh Amendment immunity extends to state agents and instrumentalities).

Gilmore submits a single paragraph in support of her argument that Eleventh Amendment immunity does not apply to Beveridge because he "is not a state actor."  ECF No. 18 at 2.  Gilmore argues that a lawsuit against Beveridge is the same as a lawsuit against the Olathe Public School

District, which Gilmore claims is not an arm of the state entitled to immunity. She cites only one

case in support of this argument, *M.T. v. Olathe Public School USD 223*.[2]

In a footnote in *M.T.*, the court raised serious questions about whether Eleventh

Amendment immunity would apply to the Olathe Board of Education, but expressly declined to

decide that issue:

> The School District Defendants do not argue that the Olathe School
> District is a state entity entitled to Eleventh Amendment immunity.
> *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274,
> 280 (1977) (setting forth factors to be considered in deciding
> whether local board of education is entitled to Eleventh Amendment
> immunity and finding that local board of education in Ohio was
> "more like a county or city than it is like an arm of the State");
> *Ambus v. Granite Bd. of Educ.,* 995 F.2d 992, 995 (10th Cir. 1993)
> (noting that "[n]early all other courts considering the issue since *Mt.
> Healthy* have refused to grant local school districts Eleventh
> Amendment immunity") (citations omitted); *Unified Sch. Dist. No.
> 480 v. Epperson*, 583 F.2d 1118, 1123 (10th Cir. 1978) (holding that
> local Kansas school district "and its school board members acting in
> their official capacity, are not the alter ego of the state, but are more
> like a municipality, for example, and hence do not enjoy Eleventh
> Amendment immunity"). Given the School District Defendants'
> argument that the Olathe School District and the Olathe Board of
> Education are the same legal entity, it is difficult to see how
> Eleventh Amendment Immunity would extend to the local Board of
> Education. In any event, the Court need not reach this issue.

*M.T.*, 2018 WL 1847036, at *3 n.14. The *M.T.* court correctly noted that the Tenth Circuit

previously found that a different Kansas school district and its school board members were more

like a municipality and therefore not entitled to Eleventh Amendment immunity. *See Epperson*

---

[2]      Gilmore cites *M.T. v. Olathe Public School USD 223*, 17-2710, 2018 WL 80210
(D. Kan. Feb. 9, 2018), which the Court presumes to be an error because that order addresses the
plaintiff's motion to proceed by pseudonym and does not appear to reach any issues that would
bear on the analysis here. The court assumes Gilmore meant to cite *M.T. v. Olathe Public School
USD 233*, No. 17-2710-JAR-GEB, 2018 WL 1847036 (D. Kan. Apr. 18, 2018), in which the
District Judge briefly touched on these issues in a footnote.

583 F.2d at 1123 (relying on *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 280

(1977) (setting forth factors to consider when making the determination)).

Relying on *Mt. Healthy* and other case law, the Tenth Circuit has set out four primary

factors for determining whether an entity constitutes an arm of the state:

> First, we assess the character ascribed to the entity under state law.
> Simply stated, we conduct a formalistic survey of state law to
> ascertain whether the entity is identified as an agency of the state.
> Second, we consider the autonomy accorded the entity under state
> law.  This determination hinges upon the degree of control the state
> exercises over the entity.  Third, we study the entity's finances.
> Here, we look to the amount of state funding the entity receives and
> consider whether the entity has the ability to issue bonds or levy
> taxes on its own behalf.  Fourth, we ask whether the entity in
> question is concerned primarily with local or state affairs.  In
> answering this question, we examine the agency's function,
> composition, and purpose.

*Steadfast Ins. Co. v. Agric. Ins. Co.*, 507 F.3d 1250, 1253 (10th Cir. 2007) (internal citations

omitted).  The two overriding inquiries remain evaluating how much autonomy is given to the

agency and the potential for treasury liability.  *See Sturdevant v. Paulson*, 218 F.3d 1160, 1167

(10th Cir. 2000); *see also Epperson*, 583 F.2d 1121-22 (focusing on (1) the extent to which the

board functioned with substantial autonomy from the state government, even though it was

carrying out a state mission and, (2) to what extent the agency was financed independently of the

state treasury).

Neither party addressed any of these issues or the applicability of the Tenth Circuit's

decision in *Epperson*.  Moreover, no party addressed whether the facts and statutes relied upon by

the Tenth Circuit in the 1978 *Epperson* case or the 1993 *Ambus* case are still applicable today in

the context of the Olathe Public Schools' Board of Education.  In ruling on dispositive motions

raising Eleventh Amendment immunity issues, courts rely on these unique facts and the parties'

arguments regarding how these facts apply to the law.  For example, in *Epperson*, the Tenth Circuit

stated that a key factor to evaluate in determining whether the Eleventh Amendment provides immunity to a school district was whether "a money judgment rendered in federal court against the school district might be paid, at least partially, out of state funds." *Epperson*, 583 F.2d at 1122. Because the parties had agreed that no such judgment would be paid out of state funds, the Tenth Circuit did not have to analyze that key factor. *See id.* ("In the instant case, as referred to above, it is agreed, and was so found by the trial court, that any money judgment which might be awarded either Peters or Epperson against the school board members acting in their official capacities would not come from state funds, but from monies raised by special levy within the school district itself."); *see also Steadfast*, 507 F.3d 1250 (in ruling on a motion to dismiss regarding an entity's Eleventh Amendment immunity, the Tenth Circuit extensively evaluated all relevant factors, including the degree of control the state had over the entity and the entity's finances); *Cash v. Granville Cty. Bd. of Educ.*, 242 F.3d 219, 224 (4th Cir. 2001) (in evaluating the application of Eleventh Amendment immunity to a school board at the summary judgment stage, the court relied on the "parties['] agree[ment] that the State would not be legally obligated to pay any judgment rendered against the School Board in this case" and on other factual admissions by the parties).

None of these facts are before the Court on the parties' limited briefing. Both sides had the opportunity to address these factors and declined to do so. While Gilmore ultimately may show that Beveridge is not entitled to Eleventh Amendment immunity, she has failed to meet her burden at this early stage of the litigation to establish that this proposed affirmative defense cannot, as a matter of law, succeed under any circumstance.

As to Plaintiff's second argument, "[a]s a general rule, suits seeking damages from state officials in their individual capacities are not barred by the Eleventh Amendment." *Cornforth v. Univ. of Oklahoma Bd. of Regents*, 263 F.3d 1129, 1132–33 (10th Cir. 2001) (citing *Hafer v. Melo*,

11

502 U.S. 21, 31 (1991)).  A suit for damages may be prosecuted against a state officer in his

individual capacity "so long as the relief is sought not from the state treasury but from the officer

personally." *Id.* at 1133.  Beveridge's proposed Eleventh Amendment immunity defense does not

differentiate between the individual-capacity and official-capacity claims, simply stating:

"Defendant is entitled to immunity under the Eleventh Amendment."  ECF No. 17-1 at 12, ¶ 12.

In his reply brief, Beveridge does not clarify whether the defense is limited to the official-capacity

claims.    Regardless, the Court will not disallow the amendment at this stage under the

circumstances.

        For one, an affirmative defense is insufficient only if no circumstances exist under which

it can succeed as a matter of law.  *See Falley v. Friends Univ.*, 787 F. Supp. 2d 1255, 1257 (D.

Kan. 2011) (discussing the pleading standard for affirmative defenses).  The Court has already

found that it cannot make this determination on the present record.  Because of this, the Court will

not bar the defense on the basis that it may arguably apply to certain claims but not others.

Although the defense may not be available to Beveridge as to the individual-capacity claims, the

parties have not briefed this issue—with Gilmore simply asserting that the defense is unavailable

and Beveridge declining to clarify whether he even intends to assert the defense as to the

individual-capacity claims.

        Second, Beveridge has pleaded the Eleventh Amendment immunity defense in the same

manner as many defendants assert it—generically and without expressly distinguishing between

the individual-capacity or official-capacity claims.  Generally, Federal Rule of Civil Procedure 8

simply requires a party to state its defenses, which Beveridge has done.  *See Webb v. Walmart,*

*Inc.*, No. 2:20-CV-2286, 2021 WL 351594, at *1 (D. Kan. Feb. 2, 2021) (rejecting the application

of the *Iqbal/Twombly* pleading standard to defenses).  Rule 8 does not require "a party to show

why that defense is relevant or why the party is entitled to claim that defense." *Bowers v. Mortg. Elec. Registration Sys.*, No. CIV.A. 10-4141-JTM, 2011 WL 2149423, at *3 (D. Kan. June 1, 2011).   Under the circumstances, Beveridge's proposed defense provides sufficient notice to Gilmore, and notably Gilmore does not contend otherwise.  Arguments concerning the scope and extent to which Eleventh Amendment immunity may apply are better raised in a dispositive motion on a far more developed record.

## IV.    CONCLUSION

For the reasons stated above, Defendant Joe Beveridge's Motion for Leave to File an Amended Answer (ECF No. 16) is **GRANTED**.  Within two business days from the date of this order, Beveridge shall file his Amended Answer (ECF No. 17-1) as a separate docket entry in this case.

**IT IS SO ORDERED.**

Dated: April 13, 2022, at Topeka, Kansas.

/s/ Rachel E. Schwartz
Rachel E. Schwartz
United States Magistrate Judge