IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JENNIFER GILMORE,

     Plaintiff,

     v.                             Case No. 2:22-cv-02032-HLT-RES

JOE BEVERIDGE, et al.,

     Defendants.

## MEMORANDUM AND ORDER

This case stems from Plaintiff Jennifer Gilmore's removal from the January 2022 Olathe School Board meeting because of comments she made during the public-comment period. Plaintiff asserts various claims, including deprivation of her First Amendment free-speech rights, against Defendants Joe Beveridge, Brent Kiger, Jim McMullen, the Olathe Board of Education, and the Olathe School District. Plaintiff seeks a preliminary injunction enjoining Defendants from enforcing certain policies against her. Doc. 33. For the reasons below, the Court denies the motion.

## I.    BACKGROUND[1]

Plaintiff is a parent of a child who is a student in the Olathe School District. Doc. 38 at ¶ 1. Beveridge is a member of the school board and was president of the school board at the time of the incident. *Id.* ¶¶ 7-8. Plaintiff ran for a seat on the school board in 2021. *Id.* ¶ 23. During the election, Jim Randall, an elected Johnson County precinct committeeman, advocated for the election of his daughter, Julie Steele, to the school board. *Id.* ¶ 24. Steele was elected, but Gilmore

---

[1]    The following facts are alleged in the amended verified complaint, the exhibits to the amended verified complaint, and the exhibits submitted with the preliminary-injunction briefing. The Court has also considered the arguments and testimony presented at the July 29, 2022 preliminary-injunction hearing. The Court has also reviewed the videos of the relevant school board meetings, which are referenced in the briefs and are publicly available online.

was not. *See id.* In addition to being Steele's father, Randall is also the father-in-law of Beveridge. *Id.* ¶ 25.

Plaintiff asked to speak at the January 13, 2022 school board meeting. *Id.* ¶ 27.[2] She filled out a Public Participation Registration Card and listed the topic she planned to speak on as "community." *Id.*; *see also* Doc. 13-2. The Court refers to the version of the card Plaintiff filled out as the "Former Participation Card." The back of the Former Participation Card listed the "Format for Public Comments." Doc. 13-2 at 2. It laid out the procedures for those wishing to speak, provided a time limit of up to five minutes, and stated that the school board president may deny speaking privileges to anyone whose statement is disruptive or "not germane to the business or activities of the Board." *Id.* It also stated that "the Board shall not hear personal attacks, or rude or defamatory remarks of any kind about any employee or student of the School District or any person connected with the School District," and prohibited vulgar or obscene language. *Id.*

The policy in place at the time was Policy BCBI, last revised in September 2021. Doc. 34-1 at 13. The Court refers to this policy as the "Former Policy." The Former Policy stated that the "primary role of a Board of Education is to transact the business of the school district." *Id.* Like the Former Participation Card, the Former Policy allowed the school board president to interrupt statements that were disruptive or "not germane to the business activities of the board." *Id.* The Former Policy set a time limit of five minutes and permitted the school board president to deny anyone speaking privileges if previous conduct indicated that the meeting may be disrupted. *Id.*

Plaintiff spoke at the January 13, 2022 meeting, and shortly into her statement, the following exchange occurred between Plaintiff and Beveridge:

>Plaintiff:    Good evening. I didn't buy my board seat, but I'm
>              still here because I care about –

---
[2]    The newly elected Steele was sworn in as a school board member at this meeting.

Beveridge:      You know what –

Plaintiff:      – this district. Don't interrupt me, please. We were told prior to enrollment that masks would be optional. We're doing the same thing year after year. I agree that liars lie, but the only liar that lied in this election was Jim Randall. So let's –

Beveridge:      OK, you're done. You're done. Uh, Dr. McMullen remove her.

Plaintiff:      Why am I done?

Beveridge:      You're done. You are done.

Plaintiff:      Why am I done?

Beveridge:      You're done. We're not doing this.

Plaintiff:      I was talking to the board with a speech –

Beveridge:      You are done.

Plaintiff:      – that I can provide you.

Beveridge:      You are done.

Plaintiff:      Excuse me?

Beveridge:      You are done –

Plaintiff:      Mr. President –

Beveridge:      – we are not going to talk about persons. We're not going to –

Plaintiff:      – I'm not talking about persons.

Beveridge:      You mentioned a person.

Plaintiff:      Your father-in-law, of your sister that's on the board that spent $37,000 for her board seat.

> Beveridge:     I would like to take a five minute break, does anyone
> have an objection to that? Okay, we're gonna take a
> five minute break.

Doc. 34 at 7-8.[3] At that point, Kiger, who is a school security employee, approached Plaintiff and

indicated she must leave. Doc. 38 at ¶¶ 12, 43. Kiger and McMullen then escorted Plaintiff to her

chair to collect her things and then out to the hallway, where they told her to leave the building.

*Id.* ¶¶ 52-53. Plaintiff initially declined to leave the building, but McMullen told her Beveridge

had asked them to remove her from the building. *Id.* ¶¶ 54-55.

Beveridge later stated that he had "zero misgivings about [his] decision," that no other

school board members complained about his action, and that "as long as I am board president, no

one will attack family members of any of our board members during public comments." Doc. 34-

3 at 3, 5.

Plaintiff filed this case on January 23, 2022. Doc. 1. She asserted various claims for

injunctive relief and damages. On January 24, 2022, counsel for the school board sent Plaintiff a

letter in response to her email for more information about the "written district protocol." Doc. 34-

5 at 1. The letter stated the school board disagreed that Plaintiff's free speech was violated and

noted that her statement that "'the only liar that lied in this election was Jim Randall' was not only

a personal attack but also was rude, potentially defamatory, and inherently disruptive" and "was

not germane to the business or activities of the board of education." *Id.*

Shortly after filing the case, Plaintiff filed a motion for preliminary injunction, which was

initially set for a hearing on April 27, 2022. *See* Doc. 11. The Court scheduled a phone call with

the parties on April 15, 2022, to discuss the procedures for and the issues that would be discussed

---

[3]   The amended complaint and briefing provide links to the video, Doc. 38 at ¶ 33 and Doc. 34 at 8, which can
be viewed at https://www.youtube.com/watch?v=1qf_07vq73A. Plaintiff's full prepared statement is included in
the amended complaint. Doc. 38 at ¶ 110.

at the preliminary-injunction hearing. Doc. 14. But on April 14, 2022, Defendants filed a notice indicating that the school board had issued a revised policy. Doc. 26. After discussing these events during the call, Plaintiff sought leave to amend her complaint to address the new policy. The Court denied the preliminary-injunction motion as moot and without prejudice. Doc. 31. Plaintiff subsequently amended her complaint, *see* Doc. 38, and filed a second motion for preliminary injunction, Doc. 33. This second motion is currently at issue.

As indicated in Defendants' notice of revised policy, Doc. 26, the participation card and Policy BCBI were revised on April 7, 2022.[4] The Court refers to these revised documents as the Revised Participation Card and Revised Policy. The Revised Participation Card states that the school board meetings are a limited public forum, and that "[t]opics discussed in public comments shall be germane to the business of the Board." Doc. 45-3 at 2. The provision about "personal attacks, or rude or defamatory remarks of any kind about any employee or student of the School District or any person connected with the School District" was not included in the Revised Participation Card. *See id.* But the Revised Participation Card does state that if "comments relate to complaints concerning students or staff, the board requests that such complaints first be addressed to the district's administration as provided under Board Policy KN (Complaints)." *Id.* Board Policy KN (Complaints) states that complaints "made directly to the Board . . . will be referred to the Administration for study and possible resolution." Doc. 34-1 at 26. The Revised Participation Card asks speakers to "[p]lease direct your comments to all members of the board" and states that "[i]n the event of the continued violation(s) of these rules, the board may indefinitely discontinue a speaker's privilege to address the board." Doc. 45-3 at 2.

---

[4]   Video of the April 7, 2022 board meeting is available at https://www.youtube.com/watch?v=xC65MTmfkO4.

The Revised Policy allows the school board president or presiding officer to set a time limit on a speaker during the limited public forum portion of school board meetings. Doc. 34-7. The Revised Policy states that "[t]opics expressed during the limited public forum shall be germane to the business of the board. Threats of harm or violence will not be permitted." *Id.* It additionally provides that school board members should not interact with speakers during the limited public forum except to "ask clarifying questions." *Id.* Like the Revised Participation Card, the Revised Policy requests that complaints concerning students or staff first be addressed to school district administration as provided for in Board Policy KN (Complaints). *Id.*

Plaintiff testified at the preliminary-injunction hearing that she spoke at school board meetings in September 2020, December 2020, August 2021, September 2021, and October 2021. She did not call anyone a liar at those school board meetings and was not interrupted. Plaintiff testified that she would like to speak at school board meetings about critical or negative things if she thinks it's in the interest of the school or the children who attend school in Olathe. She would also like to be able to tell school board members if she believes their conduct is unethical, which she believes would be a personal attack on them. She also testified that Beveridge has historically used Kiger and McMullen to confront speakers at school board meetings. Beveridge was replaced as school board president in July 2022 during an annual reorganization of board officers. It is unclear what authority Beveridge has towards speakers in his current role.

As part of her amended complaint, Plaintiff submitted a declaration stating that she has historically attended and spoken at school board meetings. Doc. 38 at 37. Plaintiff's declaration states that she would like to speak at future school board meetings but is "unsure of what I might say at a public comment section without violating [the] speech code" and that she is "unsure that if or when I violate the speech code that I would again be expelled from the meetings and the

building." *Id.* She is also unsure of the meaning of "germane to the business of the Board." *Id.* In her declaration, Plaintiff further states:

> I would like to publicly comment on the fact Joe Beveridge and his board member sister in law are biased and self-interested in each other regarding their school board member functions. I would like to comment that the school board should not have family members or that kind of family relationship on the Board for many reasons. I also want to share that the Board's speech policies are unconstitutional and that what they did to me was rude, wrong, outrageous, and personally retaliatory. I would like to discuss that their speech policy is unconstitutional and subject to abuse as demonstrated in what happened to me. I haven't shared those opinions with the Board at a public meeting yet and do not intend to do so because of the defendants' policies and their application of them.

*Id.*

At the hearing, current school board member Brian Connell testified that Plaintiff would not run afoul of the Revised Policy if she spoke at a school board meeting using the same words she used in January. Chris Pittman, who is counsel for the Olathe School District, testified that defamatory or personal attacks may be permitted under the Revised Policy as long as it is germane to the business of the school board.

## II.    STANDARD

A party seeking a preliminary injunction must show that there is a substantial likelihood of success on the merits of the underlying claim, irreparable harm will occur unless the injunction is issued, the threatened injury outweighs any potential harm that the injunction may cause to the opposing party, and the injunction, if issued, will not adversely affect the public interest. *N.M. Dep't of Game & Fish v. U.S. Dep't of the Interior*, 854 F.3d 1236, 1246 (10th Cir. 2017). A preliminary injunction is "an extraordinary remedy." *Id.* at 1245-46 (quoting *Winter v. Nat. Res.*

*Def. Council, Inc.*, 555 U.S. 7, 22 (2008)). Whether to issue an injunction is within the discretion

of the court. *See Kansas v. United States*, 249 F.3d 1213, 1227 (10th Cir. 2001).[5]

## III.   ANALYSIS

As a preliminary matter, the Court addresses the impact of the Revised Policy. It is

undisputed that Plaintiff was removed from the school board meeting under the Former Policy.

Plaintiff is certainly entitled to, and does seek, damages related to that past event. And the merits

of her First Amendment claims vis-à-vis the Former Policy and Former Participation Card are an

entirely separate matter. But Plaintiff does not currently face any future injury, irreparable harm,

or credible threat of enforcement under the Former Policy and Former Participation Card because

those policies are no longer in effect. *See Allen v. Collins*, 529 F. App'x 576, 579 (6th Cir. 2013)

("Here, too, the district court could not enjoin the Parole Board from using the 2007 Guidelines

because they no longer exist. Martin simply cannot have a personal stake in rescinded policies.").[6]

Plaintiff does, however, argue that she faces threat of prosecution or chilling of her speech

under the Revised Policy and Revised Participation Card. *See Ward v. Utah*, 321 F.3d 1263, 1267

(10th Cir. 2003). The Revised Policy and the Revised Participation Card are the only relevant

---

[5]   Defendants assert that the requested injunction is a disfavored mandatory injunction subject to a more stringent standard. The Court notes that it would reach the same result even if analyzed under the standard for disfavored injunctions.

[6]   The parties have referenced the voluntary-cessation doctrine. Voluntary cessation relates to mootness. The Court does not determine at this stage whether or how the voluntary-cessation doctrine applies to the ultimate merits of any claims in this case. But the issuance of the Revised Policy effectively moots the relevance of the Former Policy for purposes of the preliminary-injunction motion. *See Ohio v. U.S. Env't Prot. Agency*, 969 F.3d 306, 309 (6th Cir. 2020) ("What the States overlook, however, is the distinction between mootness as to a preliminary-injunction appeal and mootness as to the case as a whole. . . . And here the relevant time frame for each recurrence inquiry is different. The purpose of a preliminary injunction, unlike a permanent one, is to prevent any violation of the plaintiff's rights before the district court enters a final judgment."). Here, the Former Policy is not in effect, and there is no evidence it will be in effect before final judgment. To the extent these facts change, then the analysis will necessarily change. But at this stage, the issue of whether to preliminarily enjoin the Former Policy is moot. The Court acknowledges Plaintiff's argument that Defendants interpret the language in the Revised Policy to cover the same conduct prohibited by the Former Policy, and thus there is no meaningful difference between the two. But this is essentially an argument that the Revised Policy is being <u>applied</u> in an unconstitutional manner, not that the Former Policy is still in effect.

policies in effect at this time and therefore the only polices the Court considers enjoining at the preliminary stage.

### A.      Likelihood of Success on the Merits[7]

Plaintiff clarified at the hearing that she makes three challenges to the Revised Policy and Revised Participation Card. First, Plaintiff challenges the Revised Policy and Revised Participation Card as facially invalid restrictions for a limited public forum. Second, Plaintiff alleges the Revised Policy and Revised Participation Card are unconstitutionally vague. Third, Plaintiff argues the Revised Policy and Revised Participation Card are unconstitutional as applied to her. The Court considers Plaintiff's likelihood of success on each of these claims.

### 1.      Facial Challenge – Limited Public Forum

The Court first considers whether the Revised Policy and Revised Participation Card are facially proper restrictions for public comments at school board meetings. A three-step analysis applies to free speech claims on government property: (1) determine whether the plaintiff's conduct is protected speech; (2) "identify the nature of the forum, because the extent to which the [defendant] may limit access depends on whether the forum is public or nonpublic"; and (3) determine "whether the justifications for exclusion from the relevant forum satisfy the requisite standard." *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 797 (1985).

On the first point, there is no meaningful dispute that Plaintiff's statements to the school board are protected speech. *See McBreairty v. Sch. Bd. of RSU 22*, 2022 WL 2835458, at *5 (D.

---

[7] Plaintiff does not distinguish among Defendants with regard to her claims or the requested injunctive relief. The Revised Policy was approved by the Olathe School Board presumably in its governing role for the Olathe School District. The Revised Policy also gives the "board president or presiding officer" some degree of control over the public forum session of the school board meetings. Beveridge was the school board president at the time Plaintiff filed her motion, though he is no longer school board president. Based on this, it appears Plaintiff seeks injunctive relief as to the policies themselves against the Olathe School Board, the Olathe School District, and Beveridge. To the extent Plaintiff seeks injunctive relief against Kiger and McMullen, the Court addresses that separately below in the context of the removal language in the Revised Participation Card.

Me. 2022) (holding that "expression of . . . school-related concerns at the podium during the public comment period of School Board meetings constitutes speech that is protected under the First Amendment").

Second, the Court determines the nature of the forum. There are four types of fora: (1) traditional public fora; (2) designated public fora; (3) limited public fora; and (4) nonpublic fora. *Cole v. Goossen*, 402 F. Supp. 3d 992, 1013 (D. Kan. 2019). Regulations on speech in public and designated public forums require more exacting scrutiny, while restrictions in limited public or nonpublic forums require less rigorous justification. *Id.* In this case, the parties agree that the school board meeting is a limited public forum. *See* Doc. 38 at ¶ 136; *see also* Doc 45-3 at 2. This is in keeping with how most courts classify school board meetings. *McBreairty*, 2022 WL 2835458, at *7 (noting that "most courts that have considered the issue have found that [school board meetings] fall in the limited public forum category"). Accordingly, the Court will evaluate the relevant policies under the standard for limited public forums. *See Smith v. City of Middletown*, 2011 WL 3859738, at *4 n.3 (D. Conn. 2011) ("Where the parties agree that a forum is a limited public forum, the court may agree to this characterization.").[8]

Third, the Court considers whether the Revised Policy and Revised Participation Card satisfy the standards for limited public forums. A limited public forum is one reserved for its intended purpose. *Cole*, 402 F. Supp. 3d at 1015; *see also Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995) (noting the state may confine "a forum to the limited and legitimate purposes for which it was created" by "reserving it for certain groups or for the discussion of certain topics"); *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1202-03 (10th Cir.

---

[8]   Plaintiff argues that the school board cannot limit the content of her speech because it allows her to write any topic on the Revised Participation Card. Doc. 34 at 15. But this does not transform the nature of the forum. To the contrary, the Revised Participation Card itself says that school board meetings are limited public forums and that topics should be confined to those "germane to the business of the Board." Doc. 45-3 at 2.

2007) (noting that a limited public forum is a nonpublic forum opened to certain speakers or certain types of speech); *Rowe v. City of Cocoa, Fla.*, 358 F.3d 800, 803 (11th Cir. 2004) (noting that a limited public forum is "a limited platform to discuss the topic at hand"). "Regulations of speech in a . . . limited public forum are subject to the more deferential reasonableness standard." *Summum v. Callaghan*, 130 F.3d 906, 916 (10th Cir. 1997). In a limited public forum, the government can put <u>reasonable limits on content</u> based on the nature of the forum, so long as the distinctions are <u>viewpoint neutral</u>. *Id.* at 916-17.[9] "Reasonable" in the context of a limited public forum is one that is designed to conform the forum to the limited purpose for which it was created. *See Ctr. for Investigative Reporting v. S.E. Pa. Trans. Auth.*, 975 F.3d 300, 314 (3d Cir. 2020).

Plaintiff primarily challenges the statement in the Revised Policy limiting public comments to those topics "germane to the business of the Board." The Court finds this is not an unreasonable limitation in a limited public forum during a school board meeting, nor does it limit any particular viewpoint on its face. "Plainly, public bodies may confine their meetings to specified subject matter . . . ." *City of Madison, Joint Sch. Dist. No. 8 v. Wis. Emp. Relations Comm'n*, 429 U.S. 167, 175 n.8 (1976); *see also Smith*, 2011 WL 3859738, at *5 (finding that "restriction of public comment to items on the agenda is also reasonable because it serves to confine the forum 'to the limited and legitimate purposes for which it was created'—in this case, facilitating the official business of the Council"). Thus, limiting topics to those "germane to the business of the Board" is a reasonable and facially viewpoint-neutral limitation in this context.

Plaintiff also challenges the language in the Revised Policy and Revised Participation Card that "board members shall not interact with speakers during the limited public forum" unless

---

[9]  Defendants cite a different standard for limited public forums. Doc. 45 at 5. Defendants rely on *Scroggins v. City of Topeka* for this standard. *Id.* But in *Scroggins*, the court characterized the forum as a designated public forum, which carries a different level of scrutiny. 2 F. Supp. 2d 1362, 1370-71 (D. Kan. 1998).

asking clarifying questions. Doc. 34-7 at 1; *see also* Doc. 45-3 at 2. Plaintiff contends this provision "functions as a content based speech limitation upon the speaker as well as a prior restraint to both the speaker and the board member," and is a "prior roving restraint restriction." Doc. 34 at 19-20. Plaintiff also challenges a provision in the Revised Participation Card that a speaker should "direct . . . comments to all members of the board," Doc. 45-3 at 2. Plaintiff argues this is viewpoint discrimination. Doc 34 at 18-19.

The Court does not entirely follow Plaintiff's arguments regarding these provisions. But limiting interruptions by board members and asking that speakers address the board as a whole is not unreasonable, especially in light of the fact that the public-comments section of the school board meeting is limited to 45 minutes. *See* Doc. 34-7 at 1. Further, to the extent the policy limits what <u>school board members</u> may say, it is unclear how Plaintiff has standing to make that challenge. Nor does it seem unreasonable to have the school board be addressed as a whole. Contrary to Plaintiff's conclusory statement, there is no apparent viewpoint discrimination in this requirement.

Finally, Plaintiff challenges the language in the Revised Policy and Revised Participation Card that states that complaints about students or staff should be first addressed via a separate district policy, Board Policy KN (Complaints). *Id.*; *see also* Doc. 45-3 at 2. Plaintiff argues this is impermissible viewpoint discrimination because "complaints" suggest negative speech, but not positive. Doc. 34 at 17-18. The Court questions Plaintiff's standing to challenge this provision, as she has never been subject to it and arguably hasn't stated any intention to complain about students or staff in the future.

In any event, the Revised Policy and Revised Participation Card simply state that the school board "requests" or "may request" that complaints about students or staff be addressed

administratively first. Doc. 45-3 at 2; Doc. 34-7 at 1. And Connell testified that a speaker could ignore the request and continue speaking. The Court does not construe this as mandatory restriction on speech. On its face, the language is not mandatory. And because this language has not been applied to Plaintiff, the Court takes the language as written.

Based on this analysis, the Court finds that the Revised Policy and Revised Participation Card are facially reasonable and viewpoint neutral. To the extent Plaintiff mounts a facial challenge to this language as an impermissible restriction on a limited public forum, she is unlikely to succeed on the merits of that claim.

## 2.      Facial Challenge – Vagueness

Plaintiff also challenges the "germane to the business of the Board" language as unconstitutionally vague.[10] A restriction may be unconstitutionally vague for two reasons: first, it does not provide people of ordinary intelligence with reasonable opportunity to know what is prohibited; and second, it authorizes arbitrary or discriminatory enforcement. *Faustin v. City & Cnty. of Denver, Colo.*, 423 F.3d 1192, 1201-02 (10th Cir. 2005). The purpose of the doctrine is to allow a person of ordinary intelligence to know what conduct is prohibited so they can act accordingly. *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972).

Although narrow tailoring is not required in the context of a limited public forum, there must still be "some sensible basis for distinguishing what may come in from what must stay out." *See Minn. Voters All. v. Mansky*, 138 S. Ct. 1876, 1888 (2018). "[P]erfect clarity and precise guidance" are not required. *Id.* at 1891 (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989)). Additionally, hypertechnical theories or hypothetical cases cannot create vagueness,

---

[10]   Although Plaintiff's brief occasionally suggests that other provisions are vague, her vagueness challenge primarily focuses on the phrase "germane to the business of the Board." The Court likewise focuses its analysis there.

especially where the provision is "surely valid in the vast majority of its intended applications." *Faustin*, 423 F.3d at 1202 (quoting *Hill v. Colorado*, 530 U.S. 703, 733 (2000)).

Under this standard, the Court concludes that "germane to the business of the Board" is not unconstitutionally vague. People of ordinary intelligence would understand "germane" in this context to mean relevant.[11] The Court struggles to see how a person of ordinary intelligence would not understand that their remarks during a school board meeting should be relevant to the business of the school board.

In *Moms for Liberty – Brevard County, Florida v. Brevard Public Schools*, the court upheld speech restrictions that allowed interruption of speech that was "too lengthy, personally directed, abusive, obscene, <u>or irrelevant</u>" because it "precisely lists what it expects of speakers and the chair, so it gives a person of ordinary intelligence warning of prohibited conduct." 2022 WL 272940, at *2, *4 (M.D Fla. 2022) (emphasis added).[12] However, in *Marshall v. Amuso*, the court found that a policy allowing a presiding officer to interrupt comments that are "irrelevant" was vague because it was "irreparably clothed in subjectivity" and provided no standards to guide the presiding officer's discretion. 571 F. Supp. 3d 412, 424-25 (E.D. Pa. 2021).[13] The Court is more persuaded by the reasoning of *Moms for Liberty*.

Certainly, "germane to the business of the Board" is broad and provides no specific examples. But courts typically won't "fault [a] board for its written policy even if it failed to anticipate every detail of what would and would not be allowed at meetings." *Lowery v. Jefferson*

---

[11] Merriam Webster defines "germane" as "being at once relevant and appropriate: fitting." The Oxford-English Dictionary likewise includes the definition "[r]elevant to the matter under consideration, pertinent."

[12] This case is currently on appeal to the Eleventh Circuit.

[13] In *Marshall*, the plaintiffs conceded that the term "irrelevant" may survive a facial challenge. *Marshall*, 571 F. Supp. 3d at 423-24. The court nevertheless found it unconstitutionally vague. *Id.* at 424-25. This analysis built on the plaintiffs' as-applied challenge, which involved the defendant applying his own "subjective interpretation of relevance" when he barred statements about a district policy that was on the agenda. *Id.* at 423.

*Cnty. Bd. of Educ.*, 586 F.3d 427, 436 (6th Cir. 2009). "Condemned to the use of words, we can never expect mathematical certainty from our language." *Grayned*, 408 U.S. at 110. The fact that certain topics might straddle the line does not make the language unconstitutionally vague. *See id.* at 110 n.15 (noting that it "will always be true that the fertile legal imagination can conjure up hypothetical cases in which the meaning of (disputed) terms will be in nice question" (internal quotation and citation omitted)); *see also Dr. John's, Inc. v. City of Roy*, 465 F.3d 1150, 1158 (10th Cir. 2006) ("Although there may be instances where an adult bookstore would be unsure of whether its stock, floorspace, or revenue is made up of a 'significant or substantial portion' of adult material, there are myriad instances in which it would not."). This is especially true here, where the limitation at issue—limiting content to the purpose of the forum—is the exact type of limitation permitted in a limited public forum. *See Faustin*, 423 F.3d at 1202 (rejecting hypertechnical theories or hypothetical cases where the provision is "surely valid in the vast majority of its intended applications").

Nor does the "speculative danger of arbitrary enforcement . . . render the ordinance void for vagueness." *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 503 (1982). Certainly, a policy may be unconstitutionally vague if it authorizes or uniquely allows for arbitrary or discriminatory enforcement. *Faustin*, 423 F.3d at 1201; *see also, e.g.*, *Hicks v. Clermont Cnty. Bd. of Comm'rs*, 2018 WL 6418895, at *2-3 (S.D. Ohio 2018) (finding policy that prohibited statements that "outrage[] the sensibilities of the Board" was impermissibly vague because it "not only risks ad hoc and subjective enforcement, it expressly provides for it"). But that doesn't foreclose discretion altogether, especially where the provision at issue, like here, measures what is allowed and not allowed by objective criteria, e.g. relevant to school board business. *See Dr. John's, Inc.*, 465 F.3d at 1159 (distinguishing between laws "with flexible and reasonably broad

terms that still provide the necessary guidance" versus "laws lacking any standard of conduct whatsoever"). "For a school board to function, it must be able to keep its meetings in order, a requirement that necessarily demands that the moderator exercise some discretion over the number of speakers and the time allotted for each to speak." *Lowery*, 586 F.3d at 436. This includes allowing a presiding officer to make judgment calls and "regulate irrelevant debate." *Jones v. Heyman*, 888 F.2d 1328, 1333 (11th Cir. 1989) (discussing a designated public forum); *see also Ison v. Madison Local Sch. Dist. Bd. of Educ.*, 3 F.4th 887, 896-97 (6th Cir. 2021) (upholding presiding officer's discretion as to the contour and meaning of "reasonable decorum").

The Court accordingly finds that Plaintiff is unlikely to succeed on the merits of her vagueness challenge to the language restricting speakers to topics "germane to the business of the Board."

### 3.    As Applied Challenge

Plaintiff brings an as-applied challenge to the Revised Policy and Revised Participation Card on the grounds that they are being applied in the same manner as the Former Policy and Former Participation Card despite the removal of certain language. Defendants contend Plaintiff cannot assert an as-applied challenge to the Revised Policy and Revised Participation Card because these policies have never been applied to Plaintiff. This is undisputed, as Plaintiff has not attended or spoke at any school board meetings since the policies were revised. Thus, in the context of deciding whether Plaintiff has a likelihood of success on the merits of this claim, the Court must also consider standing. Notably, the fact that Plaintiff was removed from the January 2022 meeting does not—standing alone—justify her seeking prospective relief regarding the application of the

Revised Policy. *See Cole*, 402 F. Supp. 3d at 1003 (citing *Mink v. Suthers*, 482 F.3d 1244, 1253 (10th Cir. 2007) and *Los Angeles v. Lyons*, 461 U.S. 95, 108 (1983)).[14]

Article III standing—the case and controversy requirement—requires a plaintiff to have an actual stake in the case. *Brady Campaign to Prevent Gun Violence v. Brownback*, 110 F. Supp. 3d 1086, 1091 (D. Kan. 2015). This requires, among other things, that a plaintiff suffer an injury in fact. *See Ward*, 321 F.3d at 1266. In the First Amendment context, this can be shown through either a credible threat of enforcement of a provision, or a chilling on First Amendment activity. *Id.* at 1267.

Plaintiff's declaration states that she would like to attend school board meetings and make certain comments, but she is unsure whether those statements would violate the Revised Policy and Revised Participation Card. *See* Doc. 38 at 37. She fears again being expelled from school board meetings, perhaps indefinitely. *Id.* However, the Court finds Plaintiff has not demonstrated a credible threat of enforcement or removal under the Revised Policy or Revised Participation Card.

"[W]hether there is a credible or objectively justified fear of future enforcement . . . is largely dependent on whether there has been a <u>past</u> enforcement of the <u>same statute or provision</u> for the <u>same conduct</u>." *Cole*, 402 F. Supp. 3d at 1006. Here, the Court acknowledges the January 2022 incident (past enforcement). And although the policies have been revised, Plaintiff contends the Revised Policy and Revised Participation Card will be applied in effectively the same way as

---

[14] Plaintiff must also ultimately demonstrate standing to mount her facial challenges. *Ward*, 321 F.3d at 1267 ("A plaintiff bringing a facial challenge to a statute on First Amendment grounds, however, must nonetheless establish an injury-in-fact sufficient to satisfy Article III's case-or-controversy requirement."). Defendants do not challenge her standing on those claims, likely because they focus on the "germane to the business of the Board" language, which was included in both the Former and Revised Policies. As explained above, however, Plaintiff is unlikely to succeed on the merits of those facial claims regardless of the standing analysis.

the Former Policy and Former Participation Card. The missing piece is that Plaintiff has not demonstrated she intends to engage in the same conduct.

Plaintiff was removed from the January 2022 school board meeting after making statements about Jim Randall, who is not a school board member or school employee. Defendants complained this was both a personal attack on the relative of a school board member and not germane to school board business. Plaintiff now seeks to go to school board meetings and speak about school board members and school board policies. On their face, these topics seem germane to school board business. Even if, as Plaintiff suggests, Defendants have suggested they would treat her January 2022 statements the same way under the Revised Policy, the comments she wishes to make are of a wholly different nature. An analogy can be made to *Cole*, where the plaintiffs tried to rely on past removal from the Statehouse for "unfurling four two-story banners" to show they feared enforcement of a policy banning small, personal, handheld signs. *Id.* at 1008. Because "the conduct [was] not analogous," the plaintiffs were "no more chilled from having personal, handheld signs in the Statehouse than any other person." *Id.* at 1009. They thus lacked standing to challenge the ban on handheld signs. *Id.*

Here, the result is the same. Plaintiff was removed from the school board meeting for speaking about someone not affiliated with the school board or school district. She now wishes to speak about school board members and school board policies. But the past consequences for one type of behavior do not demonstrate that she credibly faces future consequences for a different type of behavior, even to the extent she believes the policies are being similarly applied.

The statements Plaintiff seeks to make do not appear to violate the Revised Policy or Revised Participation Card. At least on their face, comments about school board members and school board policies seem "germane to the business of the Board." Nor is there any evidence that

Defendants will prohibit Plaintiff from making critical comments that are otherwise germane to the business of the school board. Plaintiff may have a subjective fear that Defendants will misapply the policies against her. But that subjective fear is not enough to create a <u>credible</u> threat of future enforcement. There is no evidence that Defendants would remove Plaintiff for the statements she wishes to make.[15]

In sum, Plaintiff has not demonstrated that she has standing to challenge the Revised Policy or Revised Participation Card as applied and is therefore not likely to succeed on the merits of that claim.

### B.    Irreparable Harm

Plaintiff does not offer any argument about irreparable harm other than stating that the "deprivation of [Plaintiff's] constitutional liberty has and continues to cause her irreparable injury." Doc. 33 at 2. "[T]here is a presumption of irreparable harm for the loss of First Amendment freedoms." *Celebrity Attractions, Inc. v. Okla. City Pub. Prop. Auth.*, 660 F. App'x 600, 603 (10th Cir. 2016). But as detailed above, the Court has found that Plaintiff is unlikely to succeed on the merits of the specific First Amendment claims at issue <u>in this motion</u>. *See Cole*, 402 F. Supp. 3d at 1019 (finding "there is no presumption of irreparable harm for the loss of First Amendment freedoms where Plaintiffs have not shown a First Amendment violation"). In the absence of any additional argument on this point, Plaintiff has failed to show she will suffer irreparable harm without a preliminary injunction.

---

[15]    The Court notes that there is some discussion by the parties regarding whether Plaintiff's January 2022 statements would run afoul of the Revised Policy and Revised Participation Card. Plaintiff contends that, despite revising the policy, Defendants would take the same action against those comments under the Revised Policy. *See* Doc. 34 at 26. However, Connell testified that Plaintiff's statements from January 2022 would not violate the Revised Policy or Revised Participation Card. Pittman testified that it would turn on whether the statements—even defamatory statements or personal attacks—are germane to the business of the school board. This dispute seems largely academic because Plaintiff has not indicated a desire to make a statement similar to the one she made in January 2022.

### C.      Remaining Injunction Factors

Because the Court has found Plaintiff has not demonstrated a substantial likelihood of success on the merits or that she will suffer irreparable harm without an injunction, the Court concludes that Plaintiff's preliminary-injunction motion should be denied on those grounds and need not consider the remaining injunction factors.

### D.      Removal Language and Requested Injunction Against Kiger and McMullen

#### 1.      Removal Language

Finally, the Court addresses the language in the Revised Participation Card that states that, "[i]n the event of the continued violation(s) of these rules, the board may indefinitely discontinue a speaker's privilege to address the board." Doc. 45-3 at 2. Plaintiff refers to this as the "Speaker's Death Penalty." Doc. 34 at 22. But it is not entirely clear what legal challenge Plaintiff is asserting, other than to argue that the vagueness of the Revised Policy and Revised Participation Card are exacerbated by this "one-strike-you-are-out penalty" and that the removal language is an unconstitutional prior restraint on speech. *Id.* at 22-25.

As a preliminary matter, the Court believes Plaintiff somewhat overstates the removal language as a "one-strike-you-are-out penalty" simply because it references "violation(s)," which could include a singular violation. *Id.* at 22. The Revised Participation Card actually refers to "<u>continued</u> violation(s)," which would suggest some degree of continued behavior, not an isolated incident. Doc. 45-3 at 2. Further, it's not clear that the removal language allows for a "prospective ban from future government meetings." Doc. 34 at 23. It instead states that a speaker's privilege to address the school board may be discontinued but does not provide for a ban from school board meetings altogether, though this still has implications for First Amendment rights.

20

But even to the extent the removal language allows the school board to permanently bar someone from speaking or attending meetings, even for a relatively minor infraction, that issue is not properly before the Court. The Court has previously questioned whether and under what circumstances a categorical and prospective ban on attending school board meetings is reasonable. *Hirt v. Unified Sch. Dist. No. 287*, 2019 WL 1866321, at *16 (D. Kan. 2019); *see also Walsh v. Enge*, 154 F. Supp. 3d 1113, 1131 (D. Or. 2015). And prospective bans very likely would require a higher degree of scrutiny given that they operate as a prior restraint.

But here, Plaintiff was not—and on the current record has never been—permanently banned from school board meetings or permanently restricted from speaking. She was told to leave the meeting on January 13, 2022. Moreover, there is nothing in the record to suggest that <u>anyone</u> has ever been permanently banned from Olathe School Board meetings. To the extent Plaintiff harbors a fear that she will be subject to an "indefinite suspension" if she again violates any policy, Doc. 38 at 37, her subjective fear is not enough to create standing. *See D.L.S. v. Utah*, 374 F.3d 971, 975 (10th Cir. 2004); *see also Hirt*, 2019 WL 1866321, at *11. Accordingly, the Court declines to opine on the constitutionality of the removal language under these circumstances.

## 2.    Injunction Against Kiger and McMullen

Plaintiff's motion does not make any specific arguments as to the individual defendants— she just seeks injunctive relief generally. To the extent Plaintiff seeks an injunction against Kiger and McMullen, that request is denied because Plaintiff has not demonstrated a likelihood of success on the merits of her First Amendment claims or irreparable harm.[16]

---

[16] The Court and parties previously discussed whether enjoining enforcement of the policies would necessarily enjoin Kiger or McMullen from enforcing any provision in the policy at the request of Beveridge or any school board member. In light of the finding that Plaintiff has not demonstrated that the Revised Policy or Revised Participation Card violate the First Amendment, the Court does not reach that question or address the extent to which Kiger or McMullen may be liable for acting at the direction of Beveridge or any other school board member. Both Kiger

IV.    **CONCLUSION**

THE COURT THEREFORE ORDERS that Plaintiff's Second Motion for Preliminary Injunction (Doc. 33) is DENIED.

IT IS SO ORDERED.

Dated: August 5, 2022                              /s/ *Holly L. Teeter*
                                                   HOLLY L. TEETER
                                                   UNITED STATES DISTRICT JUDGE

---

and McMullen have moved to dismiss the claims against them, Docs. 54 and 56, and the Court will analyze Kiger's and McMullen's conduct in the context of deciding those motions.