IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JENNIFER GILMORE,

    Plaintiff,

    v.

JOE BEVERIDGE, et al.,

    Defendants.

Case No. 2:22-cv-02032-HLT

**MEMORANDUM AND ORDER**

Plaintiff Jennifer Gilmore alleges that she was removed from a January 2022 Olathe School Board meeting because of comments she made during the public-comment portion. Plaintiff brings a variety of First and Fourteenth Amendment claims against Defendants Joe Beveridge (in his individual capacity), the Olathe Board of Education (the "Board"), and the Olathe School District ("USD 233").

Defendants move for summary judgment on all claims. The Court finds that a reasonable jury could conclude that Plaintiff was prevented from speaking because Defendants did not like her views. The Court therefore denies summary judgment on Plaintiff's First Amendment viewpoint discrimination claim stemming from the former policy and former participation card. And it also denies summary judgment on her claim for punitive damages against Beveridge in his individual capacity for this claim. But the Court dismisses as moot Plaintiff's First Amendment facial challenge to the former policy and former participation card and dismisses for lack of standing her as-applied challenge to the revised policy and revised participation card. And it grants summary judgment to Defendants on her remaining claims. Plaintiff does not identify a factual basis for her First Amendment retaliation claim regarding the former policies such that a reasonable jury could find in her favor. Plaintiff does not identify any similarly situated speakers

who were treated differently as required for her Equal Protection claim. Plaintiff does not preserve a punitive-damage claim for her claims against the other defendants. And the revised policy and revised participation card are facially constitutional.

## I. BACKGROUND[1]

Plaintiff is a parent of a child who is a student in the Olathe School District. DSOF 1. Beveridge was president of the Board in January 2022. DSOF 2. As president, Beveridge oversaw Board meetings. DSOF 3.

Plaintiff ran for a seat on the school board in 2021. DSOF 4. Her opponent was Julie Steele. *Id.* Steele is the daughter of Jim Randall, an elected Johnson County precinct committeeman. DSOF 5. Beveridge is the brother-in-law of Steele and son-in-law of Randall. *Id*. Randall is not employed by USD 233 and has never served on the Board. DSOF 6. During the election, Board member Shannon Wickliffe tweeted a picture of Plaintiff's campaign ad and stated, "Liars lie. I don't want liars to represent my community." PSOF 23. Plaintiff lost the election to Steele in November 2021. DSOF 8.

Plaintiff spoke at Board meetings in September 2020, December 2020, August 2021, September 2021, and October 2021. DSOF 12. She did not call anyone a liar at those meetings and was not interrupted during those meetings. DSOF 13.

The Board held a meeting on January 13, 2022. Plaintiff again asked to speak at the January 2022 meeting. Policy BCBI was in place in January 2022 ("Former Policy"). *See* DSOF 9. The Former Policy addressed public comments at Board meetings. It generally states:

---

[1] The Court finds the following facts are properly supported and either not genuinely disputed or construed in favor of Plaintiff. Other facts are included throughout the order for clarity.

> The general public shall be invited to attend all board meetings, except executive sessions.
>
> At each meeting of the board, the president or the presiding office of the board shall welcome all visitors to the board meeting.
>
> Any patron wishing to speak to the board is encouraged to notify the clerk of the board five (5) days prior to the meeting and state the reason(s) for the request. The superintendent shall determine whether said request can be solved by the staff without appearance of the patron before the board. If not, the superintendent shall place the patron's request on the agenda of the next regular board meeting.
>
> The primary role of a Board of Education is to transact the business of the school district. The board recognizes its responsibility for proper governance, and therefore the need to conduct its business in an orderly and efficient manner. The board therefore establishes the following procedures to receive input from the public:
>  1. Individuals wishing to address the board are required to contact the clerk of the board prior to 12:00 p.m. on the day of the meeting giving name, address, and subject to be addressed. Individuals are requested to complete a form provided by the clerk and return the form to the clerk prior to the start of the meeting.
>  2. The board president shall be responsible for recognizing any speaker, maintaining proper order, and adhering to any time limit set. The president may interrupt or terminate any individual's statement if it is disruptive, not germane to the business activities of the board, or in violation of Kansas Statutes regarding meetings or activities of the board.
>  3. If necessary and this shall be at the discretion of the board president, the board president shall set a time limit on the length of the public participation period. Unless extended by consent of the board, the period of time for all speakers shall not exceed 30 minutes.
>  4. The board president may deny any individual speaking privileges if previous conduct of the individual has indicated that the orderly conduct of a meeting may be threatened by that person's appearance. The president has the option to stop the proceedings and poll the board to determine if a speaker may continue.
>  5. Based on the number of speakers, the board president shall set a time limit for individual speakers with no speaker to exceed five (5) minutes during the time provided for public participation or at the time a specific agenda item is discussed. At the discretion of the board president, individuals may be recognized while the board conducts its official business.
>  6. The district does not allow video or visual aids during Public Comments. Speakers are welcome to leave a flash drive or handouts for board members.
>
> If it appears that the matter which the speaker(s) wished the board to consider will consume an amount of time the board feels cannot be spared at said meeting, the board may invite such speaker(s) to return to a future meeting.

*See id.*; *see also* Doc. 111-4. Individuals wishing to speak at the January 2022 meeting had to sign a "Public Participation Registration Card" ("Former Participation Card") and list the topic the speaker wanted to speak on. *See* DSOF 10. Plaintiff filled out and signed a participation card and listed the topic she planned to speak on as "Community." DSOF 11. The backside of the Former Participation Card states:

3

> **Format for Public Comments**
>
> The Board of Education recognizes its responsibility for proper governance and therefore the need to conduct its business in an orderly and efficient manner. The Board therefore establishes the following procedures to receive input from the public:
>
> 1. A period of time shall be set aside during the meeting for individuals to address the Board.
> 2. Individuals wishing to address the Board are required to contact the Clerk of the Board prior to 12:00 p.m. on the day of the meeting giving name, address, and subject to be addressed. Individuals are requested to complete a form provided by the Clerk and return the form to the Clerk prior to the start of the meeting.
> 3. The Board President shall be responsible for recognizing any speaker, maintaining proper order, and adhering to any time limit set. The President may interrupt or terminate an individual's statement if it is disruptive, not germane to the business or activities of the Board, or in violation of Kansas Statutes regarding meetings or activities of the Board.
> 4. If necessary and this shall be at the discretion of the Board President, a time limit shall be set on the length of the public participation period. Unless extended by consent of the Board, the period of time for all speakers shall not exceed 30 minutes.
> 5. The district does not allow video or visual aids during Public Comments. Speakers welcome to leave a flash drive or handouts for board members.
> 6. Based on the number of speakers, the Board President shall set a time limit for individual speakers with no speaker to exceed 5 minutes during the time provided for public participation or at the time a specific agenda item is discussed. At the discretion of the Board President, individuals may be recognized while the Board conducts its official business.
> 7. The Board President may deny any individual speaking privileges if previous conduct of the individual has indicated that the orderly conduct of a meeting may be threatened by that person's appearance. The President has the option to stop the proceedings and poll the Board to determine if a speaker may continue.
> 8. During an open session, the Board shall not hear personal attacks, or rude or defamatory remarks of any kind about any employee or student of the School District or any person connected with the School District. The Board will also not accept public comments containing vulgar or obscene language. Any individual wishing to make a complaint about school personnel shall submit the complaint in writing to the Superintendent. If the complaint involves the Superintendent it shall be submitted in writing to the President of the Board.
> 9. The Board at its own discretion reserves the right to edit comments for broadcast that are deemed obscene, profane, defamatory, rude, or may violate federal broadcasting laws. Any member of the Board may request that all or a portion of the public comments be stricken from broadcast. The Board member shall identify with specificity which portion he or she would like to strike. This shall be submitted by motion to the Board for an up or down vote.

*See* Doc. 111-5.

The Board convened the January 2022 meeting. The following exchange occurred between Plaintiff and Beveridge when she got up to speak:[2]

---

[2]   The January 2022 meeting was recorded and can be viewed at https://www.youtube.com/watch?v=1qf_07vq73A.

4

| | |
|---|---|
| Plaintiff: | Good evening. I didn't buy my board seat, but I'm still here because I care about – |
| Beveridge: | You know what – |
| Plaintiff: | – this district. Don't interrupt me, please. We were told prior to enrollment that masks would be optional. We're doing the same thing year after year. I agree that liars lie, but the only liar that lied in this election was Jim Randall. So let's – |
| Beveridge: | OK, you're done. You're done. Uh, Dr. McMullen remove her. |
| Plaintiff: | Why am I done? |
| Beveridge: | You're done. You are done. |
| Plaintiff: | Why am I done? |
| Beveridge: | You're done. We're not doing this. |
| Plaintiff: | I was talking to the board with a speech – |
| Beveridge: | You are done. |
| Plaintiff: | – that I can provide you. |
| Beveridge: | You are done. |
| Plaintiff: | Excuse me? |
| Beveridge: | You are done – |
| Plaintiff: | Mr. President – |
| Beveridge: | – we are not going to talk about persons. We're not going to – |
| Plaintiff: | – I'm not talking about persons. |
| Beveridge: | You mentioned a person. |
| Plaintiff: | Your father-in-law, of your sister that's on the board that spent $37,000 for her board seat. |

5

> Beveridge: I would like to take a five-minute break, does anyone have an objection to that? Okay, we're gonna take a five-minute break.

DSOF 15. Brent Kiger then approached Plaintiff and indicated she must leave. Kiger and Jim McMullen escorted Plaintiff to her chair to collect her things and then out to the hallway, where they told her to leave the building.[3] *See* Doc. 96 at 4. Plaintiff initially declined to leave the building, but McMullen told her during the five-minute break that Beveridge had asked McMullen and Kiger to remove her from the building. DSOF 20; PSOF 38.

Beveridge asked the other Board members during the five-minute break something along the lines of "Should I have done that" or "was I out of line?" PSOF 9. No Board members responded. PSOF 10. Beveridge later stated at the meeting:

> I print out before every meeting the rules for public comments . . . it's all gray . . . there's no black and white at all but one thing that is one hundred percent certain is that no one is going to get on our public comments and attack family members of the board. That's one hundred percent unacceptable and will be as long as I am board president.

PSOF 14. The Board minutes state that "Joe Beveridge gave comments for the rules for public comments. Verbal attacks of family members on the board will be unacceptable." PSOF 15.

Other individuals spoke at the January 2022 meeting after Plaintiff. DSOF 21. One parent spoke about masking and the Omicron COVID-19 variant. *Id.* That parent told the Board they had "become an administration of insanity." *Id.* Another parent spoke about diversity, equity, and inclusion. *Id.* She spoke directly to an Olathe employee who was in the audience about bonds and his printouts. *Id.* Another person spoke about masks. *Id.* She also referred to a teacher who refused to greet her child because the child did not wear a mask for medical reasons. *Id.* She told the Board

---

[3] At the time, Kiger was employed by USD 233 as the Director of Safety Services. Doc. 109 at 5. McMullen was employed by USD 233 as Assistant Superintendent of Middle School Education. *Id.* Both were named as defendants but have been dismissed. *See* Doc. 96 at 17.

that the one-size-fits-all policy was not ethical. *Id.* Another parent wearing a "disgruntled parent" shirt spoke and called the Board's prior actions "political games." DSOF 22. Another parent stated that Board policy was a one-way street and that there instead needed to be a dialogue. DSOF 23. That speaker also mentioned critical race theory. *Id.* Another speaker wearing a "disgruntled parent" shirt spoke about the lack of "trust" and said "don't troll parents online calling us liars while participating in lying to the electorate." PSOF 92. No other speakers were removed. But Beveridge interrupted a speaker during the public-comment portion at an October 2021 Board meeting who was encouraging people to go vote in the upcoming election. DSOF 7.

Beveridge stated in an email after the January 2022 meeting that he had "zero misgivings about [his] decision," that no other board members complained about his action, and that "as long as I am board president, no one will attack family members of any of our board members during public comments." PSOF 18-19.

Plaintiff filed this case on January 23, 2022. Defendants issued a revised policy and participation card in April 2022 ("Revised Policy" and "Revised Participation Card"). DSOF 28. While both documents were changed and certain provisions removed, the revised documents both still include the requirement that topics expressed during the public-comment period be germane to the business of the board. DSOF 31-32; *see also* Docs. 111-8 and 111-9.

Plaintiff subsequently spoke at the October 2022 Board meeting. DSOF 33. She did not call anyone a liar and was not interrupted by the presiding officer of the Board meeting, who was at that time Wickliffe. *Id*.

## II.   STANDARD

Summary judgment is appropriate if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party

7

bears the initial burden of establishing the absence of a genuine issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant to demonstrate that genuine issues remain for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Courts view the facts and any reasonable inferences in a light most favorable to the non-moving party in analyzing summary judgment. *Henderson v. Inter-Chem Coal Co.*, 41 F.3d 567, 569 (10th Cir. 1994). "An issue of material fact is genuine if a 'reasonable jury could return a verdict for the nonmoving party.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

## III.   ANALYSIS

Plaintiff asserts as-applied and facial First Amendment challenges to the Former Policy and Former Participation Card and the Revised Policy and Revised Participation Card. She also asserts a Fourteenth Amendment Equal Protection claim. She seeks nominal and punitive damages. Defendants move for summary judgment on all claims.

### A.   As-Applied Challenges

Plaintiff asserts as-applied challenges to the Revised Policy and Revised Participation Card and to the Former Policy and Former Participation Card. The Court dismisses for lack of standing Plaintiff's as-applied challenges to the Revised Policy and Revised Participation Card. The Court previously found that Plaintiff lacked standing on those claims because the revised policies have never been applied to her and she lacked a credible threat of enforcement. Doc. 70 at 16-19. Plaintiff has not come forward with any reason for the Court to deviate from this earlier ruling.

The Court next turns to her as-applied challenges to the Former Policy and Former Participation Card. Plaintiff alleges that Defendants violated her First Amendment rights at the

January 2022 meeting by silencing her speech because they did not like her viewpoint and by retaliating against her.

### 1. Viewpoint Discrimination

#### a. Beveridge[4]

Plaintiff's viewpoint discrimination claim is her primary claim. She contends that Defendants violated the First Amendment by restricting her speech during the public-comment portion of the January 2022 meeting. Defendants contend summary judgment is warranted because the public-comment portion of the meeting was a limited public forum and Plaintiff's speech fell outside the parameters of the speech permitted by the Former Policy and Former Participation Card. Defendants thus contend that Plaintiff's speech was effectively unprotected and could be precluded by Defendants without giving rise to a First Amendment violation. *See Summum v. Callaghan*, 130 F.3d 906, 913 (10th Cir. 1997) (explaining that a First Amendment violation centers on three questions: (1) whether speech is protected, (2) the type of forum, and (3) the justification for restricting speech).

Defendants are partly correct. It is true that the public-comment portion of the January 2022 meeting was a limited public forum.[5] This means that Defendants could, through adoption of policy, restrict the speech allowed in the forum to speech addressing certain topics, and

---

[4] Beveridge has not moved for summary judgment on the grounds of qualified immunity for any claim.

[5] A limited public forum is one created by the government itself to allow speech in a particular place or context where people might otherwise not have the right to speak at all. *See Rowe v. City of Cocoa, Fla.*, 358 F.3d 800, 803 (11th Cir. 2004) (noting that a limited public forum is "a limited platform to discuss the topic at hand"). The parties agree that the public-comment portion of the January 2022 meeting was a limited public forum. *See McBreairty v. Sch. Bd. of RSU 22*, 616 F. Supp. 3d 79, 91-92 (D. Me. 2022) (noting that "most courts that have considered the issue have found that [school board meetings] fall in the limited public forum category"); *see also Smith v. City of Middletown*, 2011 WL 3859738, at *4 n.3 (D. Conn. 2011) ("Where the parties agree that a forum is a limited public forum, the court may agree to this characterization."). Neither party suggests that the Board was required to allow public comments. Instead, the Board chose to allow public comment and thereby created the limited public forum at issue.

9

Defendants were free to adopt reasonable restrictions on the time and manner of such speech. But this does not automatically mean that speech falling outside the parameters of the limited public forum is constitutionally unprotected. It simply means that Defendants (assuming a facially valid policy) could preclude speech on certain topics <u>within the forum</u> and could reasonably regulate the manner of speech <u>within the forum</u>.

This is an important point. Setting aside for the moment the limited nature of the forum, Plaintiff's speech undoubtedly fell within the broader protections of the First Amendment.[6] Her speech at a minimum addressed a public election and Plaintiff's contention that Randall lied in the context of that election. The outcome and integrity of an election is unquestionably a matter of significant public concern. And the Supreme Court has observed that speech about elections is a core protection of the First Amendment. *See Buckley v. Valeo*, 424 U.S. 1, 15 (1976) (discussing core political speech and observing that "it can hardly be doubted that the constitutional guarantee has its fullest and most urgent application precisely to the conduct of campaigns for political office" (internal quotation omitted)); *see also McIntyre v. Ohio Elections Com'n*, 514 U.S. 334, 346-47 (1995) (discussing the primacy of core political speech). Plaintiff's speech therefore was not unprotected in a general sense. Rather it was at the core of what the First Amendment protects.

Thus, regardless of the forum at issue, there is a bedrock principle of First Amendment law that governmental actors may not restrict speech based on viewpoint unless the speech falls into certain narrow categories of constitutionally unprotected speech such as fighting words or incitement to violence. *See Good News v. Milford Cent. Sch.*, 533 U.S. 98, 106-07 (2001);

---

[6] It is somewhat unclear whether Defendants challenge whether Plaintiff's speech fell within the broader protections of the First Amendment. Defendants' brief initially challenges Plaintiff's retaliation claim and argues in that section that "[a]lthough her conduct may have started out as being afforded constitutional protection, her comments quickly and alarmingly meandered into areas that are outside of such protection in that she did not follow the rules of the limited public forum." Doc. 111 at 12.

*Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995); *R.A.V. v. St. Paul*, 505 U.S. 377, 383-90 (1992) (explaining that all speech is protected except for certain narrow categories). Stated differently, the First Amendment is violated when a governmental actor precludes constitutionally protected speech because of the viewpoint expressed. *See Pahls v. Thomas*, 718 F.3d 1210, 1230 (10th Cir. 2013) (discussing mens rea requirement); *Monteiro v. City of Elizabeth*, 436 F.3d 397, 404-05 (3rd Cir. 2006). The prohibition on viewpoint discrimination is black letter law: viewpoint discrimination by the government is deeply antithetical to the Constitution and our nation's long-standing values. *See Rosenberger*, 515 U.S. at 828; *Pittsburg League of Young Voters Educ. Fund. v. Port Authority of Allegheny Cnty.*, 653 F.3d 290, 296 (3d Cir. 2011). The government may not pick and choose what viewpoints people are allowed to express. And governmental actors—including members of school boards—may not pick and choose what viewpoints they must listen to during the public-comment portion.

This means that Plaintiff's First Amendment rights were violated if Beveridge blocked Plaintiff from speaking because of her viewpoint that Randall lied during the election or because of her criticism of Randall but would have allowed her to continue speaking if she had said positive things about Randall. This would be prohibited viewpoint discrimination. *See Monteiro*, 436 F.3d at 404-05 (factually similar case explaining that the president engaged in viewpoint discrimination if she acted with the intent to suppress speech and her motive was a question for the jury). But her rights were not violated if Beveridge blocked Plaintiff from speaking because of viewpoint neutral restrictions on speech set forth in the Former Policy and Former Participation Card. His intent in silencing her is paramount (e.g., was his intent to silence her because he did not like her viewpoint

11

or was his intent to enforce viewpoint neutral restrictions for the limited public forum), and a party's intent is generally a fact question for the jury.[7]

Here, there are facts from which a reasonable jury could find that Beveridge acted because of Plaintiff's viewpoint and not because of viewpoint neutral limitations on speech set forth in the Former Policy and Former Participation Card. First, Beveridge had a history with Plaintiff insofar as Plaintiff had run against Beveridge's sister-in-law for a board seat. Second, Plaintiff's speech specifically targeted Beveridge's father-in-law when Plaintiff accused Randall of lying. Third, Beveridge interrupted Plaintiff almost immediately when she began speaking and before the content of her speech was even really known. She also offered to provide her speech to him, and he did not accept. Fourth, Beveridge did not attempt to meaningfully advise or correct Plaintiff on the limitations in the Former Policy and the Former Participation Card or seek to defuse the situation when Plaintiff made her comment about Randall. He instead declared in an agitated tone "[y]ou're done" without providing any rationale and without referencing the policy at all. Fifth, and significantly, Beveridge did not simply silence Plaintiff, but he went the additional step and had her entirely removed from the public meeting even though the Former Policy and Former Participation Card contain no provision authorizing removal. Sixth, Beveridge did not reference any specific aspect of the Former Policy or the Former Participation Card when he later commented on the situation at the January 2022 meeting. He instead stated that he would not tolerate negative comments about family members of the Board, which is notable because a jury could find that this statement implicitly suggests that he would not have removed Plaintiff had she

---

[7] There is some authority for the proposition that an actor can avoid liability by demonstrating that the speech would have been precluded anyway based on application of viewpoint neutral limitations. *See, e.g.*, *Monteiro*, 436 F.3d at 408 (Fisher, J., dissenting). Defendants do not articulate such an argument in the briefing, and, in any event, this defense would also turn on questions of Beveridge's intent that cannot be resolved at summary judgment.

said positive things about a family member. Seventh, Defendants first conveyed the rationale that Plaintiff had been silenced and removed from the meeting due to her alleged violation of the Former Policy and Former Participation Card over a week later when attorneys became involved. A jury might reasonably infer based on this timeline that the rationale is a post-hoc rationalization. These facts and others in the record could allow a reasonable jury to conclude that Beveridge acted in anger and silenced Plaintiff because he did not like the viewpoint she expressed. The Court thus denies summary judgment on Plaintiff's First Amendment viewpoint discrimination claim against Beveridge in his individual capacity.

### b. The Board and USD 233

The Board and USD 233 additionally contend that summary judgment is appropriate as to them because a reasonable jury could not find that they caused Plaintiff's constitutional deprivation through an official policy or custom. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690-91 (1978). It is true that the Board and USD 233 are only subject to liability for Plaintiff's viewpoint discrimination claim if they caused a constitutional deprivation through an official policy or custom. The Supreme Court has explained that "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible" for the violation. *Id.* at 694.

A reasonable jury could find that the Board and USD 233 are subject to municipal liability for this case.[8] The Former Policy imbues the board president with the responsibility for maintaining proper order and allows the board president to interrupt or terminate a speaker's

---

[8] Defendants contend that Plaintiff is limited to a ratification theory, which is frustrated by principles of linear time. Doc. 111 at 28-29. But Plaintiff preserved more in the pretrial order. Doc. 109 at 24-25.

statement. It also authorizes the board president to "stop the proceedings and poll the board to determine if a speaker may continue" but does not require such action or any other review of the board president's conduct on such issues.

Beveridge was the president of the Board in January 2022 and presided over the meeting where a quorum of members was present. He silenced Plaintiff and had her removed and then took a five-minute break. During this recess, he asked the other members something along the lines of "Should I have done that" or "was I out of line?" No one responded. Beveridge also directed McMullen during this recess that Plaintiff was not permitted to return to the meeting and would need to leave the building. There is no evidence that anyone in real-time objected to Beveridge's direction to McMullen. A reasonable jury could find under these circumstances that the Board and USD 233 are subject to *Monell* liability for Plaintiff's injury. *See Ritchie v. Coldwater Cmty. Sch.*, 947 F. Supp. 2d 791, 810-11 (W.D. Mich. 2013) (denying summary judgment because school board president's actions could constitute school board policy); *see also Besler v. Bd of Educ.*, 993 A.2d 805, 816-18 (N.J. 2010) ("Even if the remaining members of the Board had the authority to overrule [the president] and insist that [the plaintiff] be heard, they obviously acquiesced in the decision to silence [the plaintiff]" and "[i]n that sense, the members of the Board, by their silence, ratified [the president's] gaveling down of [the plaintiff]."). The Court denies summary judgment to these defendants on Plaintiff's viewpoint discrimination claim.

### 2. Retaliation

Plaintiff also asserts a First Amendment retaliation claim against Defendants. The elements of a First Amendment retaliation claim outside the employment context are: "(a) he or she was engaged in constitutionally protected activity; (b) the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that

14

activity; and (c) the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct." *Van Deelen v. Johnson*, 497 F.3d 1151, 1155-56 (10th Cir. 2007); *see also Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2001).

The Court typically sees First Amendment retaliation claims in the employment context when an employee engages in protected speech and is later punished through separate adverse action, such demotion or termination. Here, Plaintiff's First Amendment retaliation claim arises from the very same nucleus of facts as her viewpoint discrimination claim rather than from some subsequent adverse action. It seems that the alleged retaliatory action supporting a First Amendment retaliation claim cannot be the simple fact of prohibiting the initial speech at issue because otherwise a First Amendment retaliation claim would be coextensive with a First Amendment viewpoint discrimination claim. It would be superfluous.[9] Defendants contend that Plaintiff has failed to identify any alleged retaliatory action—separate from the prohibition on speaking that supports her viewpoint discrimination claim. Doc. 111 at 12, 16-17. Defendants also argue that Plaintiff has produced no evidence that such action would chill a reasonable person from further speech. *Id.* at 14.

Put simply, Plaintiff fails to respond to these arguments. Plaintiff extensively argues and identifies evidence to support her primary viewpoint discrimination claim. But her briefing treats the retaliation claim as an afterthought at best. And the pretrial order does not include any specific facts elaborating on her retaliation claim despite detailed facts supporting her viewpoint discrimination claim. *See* Doc. 109 at 24. Plaintiff has essentially conceded or waived the separate retaliation claim by failing to preserve it through the pretrial order and by failing to brief it in

---

[9] This would especially seem to be the case when a plaintiff seeks the same damages on the viewpoint discrimination claim and the retaliation claim, as Plaintiff does here. *See* Doc. 109 at 27-28.

response to Defendants' summary-judgment motion. The Court can envision how Plaintiff might have articulated a separate and viable retaliation theory on the facts of this case, but it is not the Court's job to serve as an advocate for either party. The Court therefore grants summary judgment to Beveridge on this claim. The Board and USD 233 are also entitled to summary judgment because "[a] municipality may not be held liable where there was no underlying constitutional violation by any of its officers." *Hinton v. City of Elwood, Kan.*, 997 F.2d 774, 782 (10th Cir. 1993).

### B. Facial Challenges

Plaintiff also asserts a facial challenge to the Former Policy and Former Participation Card and the Revised Policy and Revised Participation Card. The Court found during the preliminary-injunction phase that Plaintiff no longer faces any credible threat of enforcement of the Former Policy and Former Participation Card because they are no longer in effect. *See* Doc. 70 at 8. Neither party convinces the Court that a different outcome is warranted now. The Court thus dismisses as moot Plaintiff's facial challenge to the Former Policy and Former Participation Card.[10]

Plaintiff also lodges a challenge to the Revised Policy and Revised Participation Card. The Court previously found that Plaintiff was unlikely to succeed on the merits of her facial challenges to the Revised Policy and Revised Participation Card because they were facially reasonable based on the arguments presented and not unconstitutionally vague. *Id.* at 13-16. Again, neither side has presented any reason for the Court to deviate from its prior ruling. The Court thus grants summary judgment to Defendants on Plaintiff's facial challenge to the Revised Policy and Revised Participation Card.

---

[10] The Court dismisses this claim because Plaintiff is not entitled to independent relief on it. But the Court can envision situations in this case where it might be called upon to analyze the facial constitutionality of various sections depending on the arguments the parties intend to present at trial.

### C. Equal Protection

Defendants also seek summary judgment on Plaintiff's Equal Protection claim because she has no evidence that she was treated differently than others who were similarly situated. Doc. 111 at 30. Defendants argue that although other speakers spoke uninterrupted, they—unlike Plaintiff—spoke about school or school board matters. DSOF 21-23. By contrast, Defendants content that Plaintiff spoke directly about a person (Randall) unrelated to school board business and about the election and thus exceeded the bounds of the Board's limited public forum. Defendants also point to a speaker who was previously interrupted when they advocated that people vote in the election. *See* Doc. 111 at 31-32; DSOF 7.

The Fourteenth Amendment prohibits a state from denying "to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "A violation of equal protection occurs when the government treats someone differently than another who is similarly situated." *Jacobs, Visconsi & Jacobs, Co. v. City of Lawrence, Kan.*, 927 F.2d 1111, 1118 (10th Cir. 1991). Accordingly, a threshold showing in any Equal Protection claim is that the plaintiff was treated differently from others similarly situated. *Dalton v. Reynolds*, 2 F.4th 1300, 1308 (10th Cir. 2021); *Hennigh v. City of Shawnee*, 155 F.3d 1249, 1257 (10th Cir. 1998) ("The allegation that a plaintiff was treated differently from those similarly situated is an essential element of an equal protection action.").[11] This is a particularly high burden "where the government actor enjoys a broader range of discretion, and may properly base a decision on a myriad of potentially relevant

---

[11] Equal protection caselaw typically focuses on the existence of a particular protected class. Here, Plaintiff doesn't contend she is a member of any such class. However, a plaintiff may proceed under a "class of one" theory in certain circumstances "where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215-16 (10th Cir. 2011) (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). Plaintiff does not indicate if her Equal Protection claim is based on a class-of-one theory or something else. *See, e.g., McCoy v. Town of Pittsfield, NH*, 59 F.4th 497, 508 (1st Cir. 2023) (discussing a selective-treatment theory). Ultimately, however, the existence of a similarly situated comparator is a necessary element regardless of the theory. *See id.; see also Kan. Penn. Gaming*, 656 F.3d at 1216.

variables." *Kan. Penn Gaming*, 656 F.3d at 1218. In such a case, "the plaintiff must account for a wide range of characteristics in identifying similarly situated individuals." *Id*.

Plaintiff fails to identify any specific speaker with whom she claims to be similarly situated. *See* Doc. 113 at 38-40. Instead, she appears to argue that it should be left to the jury to decide whether she was similarly situated to any or all of the other speakers at Board meetings. *Id.* at 38-39. But this overlooks Plaintiff's burden at summary judgment. Defendants, as the moving parties, have pointed to an absence of evidence on a material issue—similarly situated comparators. It then becomes Plaintiff's burden to point to evidence from which a jury could find that there were similarly situated speakers that received different treatment. Simply stating "let the jury decide" does not meet that burden where Plaintiff identifies no evidence on which they could decide that issue in her favor.[12] Plaintiff does not even discuss any other speakers. Nor is it sufficient for her to argue that she was the only speaker removed from the meeting. *See Scarborough v. Frederick Cnty. Sch. Bd.*, 517 F. Supp. 3d 569, 580 (W.D. Va. 2021) ("Scarborough argues in her opposition that she has been treated differently from other parents because they were not blocked on Facebook. . . . But Scarborough would have needed to allege that she was treated differently from other parents who had also posted critical comments on the FCPS Facebook page.").

Plaintiff's failure to point to evidence of similarly situated individuals requires summary judgment be granted to Beveridge on Plaintiff's Equal Protection claim. *Jicarilla Apache Nation v. Rio Arriba Cnty.*, 440 F.3d 1202, 1212 (10th Cir. 2006) (noting that at the summary-judgment

---

[12]   To the extent Plaintiff argues that "germane to the business of the board" is an unconstitutionally vague standard, that argument has already been rejected. Doc. 70 at 13-16. To the extent Plaintiff bases her Equal Protection claim on the contention that her speech was wrongfully stifled because it did not stray outside the purpose of the limited public forum, that is just a restatement of her First Amendment claim, which, as discussed above, survives for trial. But the question of fact on that claim does not mean that Plaintiff's Equal Protection claim survives as well. *See Christensen v. Park City Mun. Corp.*, 462 F. App'x 831, 834 (10th Cir. 2012) (noting that "an Equal Protection Clause claim is legally distinct from a First Amendment claim").

stage, "courts have insisted that plaintiffs demonstrate similarity in all material respects"); *cf. Kan. Penn Gaming*, 656 F.3d at 1220 (stating that conclusory allegations regarding "comparable" or "similar" properties does not suffice to state a plausible Equal Protection claim even at the motion to dismiss stage). Similarly, the Board and USD 233 are likewise entitled to summary judgment because her Equal Protection claim against those parties is based on Beveridge's conduct. *See* Doc. 109 at 26; *see also Hinton*, 997 F.2d at 782.

### D. Punitive Damages

Finally, Beveridge moves for summary judgment on Plaintiff's claim for punitive damages. Plaintiff responds that this is a question for the jury. The Court generally agrees given the factual disputes identified above but makes one clarification. Plaintiff's response states that "[p]unitive damages can be awarded against defendant Beveridge and against the school district and Board." Doc. 113 at 36. But Plaintiff only asserts a claim for punitive damages against Beveridge in his individual capacity in the pretrial order. Doc. 109 at 27-28. Plaintiff does not assert a claim for punitive damages against either the Board or USD 233, and thus she has not preserved such a claim.[13] Accordingly, the Court denies Defendants' motion for summary judgment on punitive damages as to Beveridge but grants it to the extent Plaintiff intends to seek punitive damages against the Board or USD 233.

---

[13] Defendants argue the preservation issue, so that Court addresses that issue. But even if it had been preserved, punitive damages against the Board or USD 233 would not be appropriate. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271, (1981) (holding "that a municipality is immune from punitive damages under 42 U.S.C. § 1983"). In her response, Plaintiff argues for punitive damages against the Board and USD 233 under Kansas state law. But her claims all arise under § 1983.

## IV. CONCLUSION

THE COURT THEREFORE ORDERS that Defendants' Motion for Summary Judgment (Doc. 110) is GRANTED IN PART AND DENIED IN PART. The motion is DENIED as to Plaintiff's First Amendment viewpoint discrimination claim regarding the application of the Former Policy and Former Participation Card at the January 13, 2022 meeting. The motion is also DENIED as to Plaintiff's claim for punitive damages against Beveridge only, but it is GRANTED to the extent Plaintiff asserts a punitive-damage claim against the Board and USD 233. The motion is GRANTED as to Plaintiff's First Amendment retaliation claim and her Equal Protection claim against all Defendants stemming from application of the Former Policy and Former Participation Card. The motion is GRANTED as to Plaintiff's facial challenge to the Revised Policy and Revised Participation Card. Finally, the Court DISMISSES Plaintiff's First Amendment facial challenge to the Former Policy and Former Participation Card and her as-applied challenge to the Revised Policy and Revised Participation Card because those claims are either moot or Plaintiff lacks standing.

IT IS SO ORDERED.

Dated: June 21, 2023            /s/ *Holly L. Teeter*
                                HOLLY L. TEETER
                                UNITED STATES DISTRICT JUDGE