## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

Jennifer Gilmore

                  Plaintiff

v.                                    2:22-cv-02032-HLT-RES

Joe Beveridge, et al

                  Defendants

### Plaintiff's Second Motion to Disqualify

The Court has previously denied without prejudice the plaintiff's motion (ECF 99) to disqualify attorney Michael Norris as trial counsel. ECF 118.  In that ruling the Court held there might be a theory for use of the Norris letter depending on the claims and issues that remain for trial.  The Court also stated that the plaintiff is to "clearly explain why the letter is or is not relevant and admissible with citations to supporting law."  In the order the Court held that there "are also potential attorney-client privilege issues that might come into play and would need to be addressed." The Court has entered a summary judgment ruling.  ECF 119.  In conjunction with that ruling the Court has ordered the parties to mediate again.  ECF 120.  In view of the immediacy of mediation and the upcoming October trial date, the plaintiff refiles her motion to disqualify attorney Michael Norris as trial counsel in this case.  The Court is familiar with the standard of review as set forth in the prior motion. ECF 99.

### Facts

On January 14, 2022, Gilmore emailed in house board attorney Chris Pittman asking for the written district protocol as to why she was removed from the meeting.

1

On January 14, 2022, Pittman responded stating that "the Board of Education's attorney, Mike Norris, will respond to your request. I provided him with your email." On January 24, 2022, at 9:23 A.M. Michael G. Norris emailed a letter to Ms. Gilmore stating it was made "on behalf of the board of education" and provided other reasons not stated by Joe Beveridge.   In defendants' statement of facts in the pretrial order, they stated "The District's general counsel replied to her on January 24, 2022, explaining the board protocol and that she was removed from the meeting because her comments were potentially defamatory, not germane to the business of the board, and were a personal attack."

### Mr. Norris' Interjection Was in Response to a Citizen's Request to the Board

Ms. Gilmore contacted the Boards' attorney Chris Pittman regarding the justification regarding her silencing and removal.  Mr. Norris voluntarily interjected himself as the spokesperson for the Board in directing his letter, on behalf of the Board, to Ms. Gilmore.

### Post-Hoc Rationalization is an Issue to Be Heard by the Jury

The letter is relevant.  Defendants judicially admitted the letter was relevant as they placed it in the pretrial statement.  The Court has entered a ruling on the defendants' summary judgment motion. ECF 119.  The Court categorized seven subjects of facts a reasonable jury could find that the defendant Beveridge acted because of the plaintiff's viewpoint.  ECF pp. 12-13.  In the Seventh point the Court stated:

> Seventh, Defendants first conveyed the rationale that Plaintiff had been silenced and removed from the meeting due to her alleged violation of the Former Policy and

Former Participation Card over a week later when attorneys became involved. A jury might reasonably infer based on this timeline that the rationale is a post-hoc rationalization. These facts and others in the record could allow a reasonable jury to conclude that Beveridge acted in anger and silenced Plaintiff because he did not like the viewpoint she expressed

## Pretext is a Jury Question

The Court has postulated a trial before a jury litigating the actual reason for defendant Beveridge's actions against Ms. Gilmore.  As the Court has described on page 12 of the ruling, there are many factual reasons a jury could believe later reasons proffered by the Olathe School Board and its attorney Michael Norris were pretextual being post hoc fabrications.  From the limited rationale stated when Ms. Gilmore was stopped and told to leave the building – to the later period of Beveridge's closing comments – to his later email responses to Thad Snider – then attorney Norris's letter providing yet other reasons – all evidence "shifting rationales." *Crowe v. ADT Servs., Inc.,* 649 F.3d 1189, 1197 (10th Cir. 2011).  "A plaintiff can show pretext by revealing `such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence…" *Plotke v. White*, 405 F.3d 1092, 1102 (10th Cir. 2005).  Post hoc rationalizations are evidence of pretextual viewpoint discrimination. *See Am. Freedom Defense Initiative v. Wash. Metro. Area Transit Auth.,* 901 F.3d 356, 366 (D.C. Cir. 2018).  A "jury could infer from the fact that Defendant emphasized a new, personal attacks rationale in his November 5, 2009 letter that he himself had doubts about the validity of the personnel matters rationale he had invoked at the Board meeting." *MacQuigg v. Albuquerque Pub . Sch.*

*Bd . of Educ.,* No. 12-1137 2015 WL 13659218, at *5 (D.N.M. Apr. 6, 2015) (also finding that a "personal attacks" policy is viewpoint-based because it restricts only critical speech about government officials , including elected board members).

### Attorney Norris' Letter is Post-Hac Rationalization and Has Been Affirmatively Used as Such Throughout This Litigation

Attorney Norris' letter is pretextual evidence a jury can consider.  It offers reasons never contemporaneously articulated by defendant Beveridge. The defendants most recently used the Norris letter as post-hac rationalization claiming it presented the reasons "why she was removed."  Defendants Summary Judgment, ECF 111, p.6, ¶27 ("On January 24, 2022, Mr. Norris sent a letter to plaintiff providing the protocol and stating *why she was removed*")(emphasis added).

### Attorney Norris' Letter is an Admission of View Point Discrimination

The Court held in its Order that there could be "viewpoint neutral restrictions on speech set forth in the Former Policy and Former Participation Card." ECF 119, p.11.  But that does not mean every restriction contained in those documents were viewpoint neutral.  As the Court noted in footnote 10, it can be demonstrated at trial that a prohibition regarding "personal attacks" constitute unconstitutional viewpoint discrimination.  *Marshall v. Amuso*, 571 F.Supp.3d 412, 422 (E.D. Pa. 2021). Attorney Norris states, as a fact, the Board's position that Ms. Gilmore's statement was a "personal attack" which justified Mr. Beveridge's actions. This is relevant to Mr. Beveridge and the Board's state of mind and is an admission by a party opponent that Ms. Gilmore was silenced and removed because of view point discrimination: she made a personal attack against Mr. Beveridge's father-in-law. This is admissible

admission evidence. *See Grace United Methodist Church v. City of Cheyenne*, 451

F.3d 643, 667 (10th Cir. 2006). The letter is below:

 **NORRIS KEPLINGER HICKS & WELDER**ᴸᴸᶜ

11551 Ash Street, Suite 200
Leawood, Kansas 66211
P: (913) 663-2000 F: (913) 663-2006

January 24, 2022

Ms. Jennifer Gilmore                                            **VIA ELECTRONIC MAIL**
2282 W. Layton Drive
Olathe, Kansas 66061

      **Re:    Public Comment Policies**

Dear Ms. Gilmore:

On behalf of the board of education, I respond to your January 14, 2022 email to Chris Pittman.

With respect to your request for the "written district protocol," I refer you to board policy BCBI, the Format for Public Comments, and the Public Participation Registration Card. You received and signed both the Format for Public Comments and the Public Participation Registration Card prior to the board meeting. The board policies are posted on the District's website and were available for you to review before the January 13, 2022 board meeting.

The board respectfully disagrees with your assertion that your free speech was violated when your public comments were interrupted by the board president. Your public comment that "the only liar that lied in this election was Jim Randall" was not only a personal attack but also was rude, potentially defamatory, and inherently disruptive. Further, that comment was not germane to the business or activities of the board of education. If you have complaints about the election, then you have the alternative of communicating your complaints to the local election officials.

The board has an important interest in conducting orderly, efficient, effective and dignified meetings. If speakers making public comments do not adhere to the written protocol described above, the board's ability to conduct its meetings would be compromised. Your public comments violated that protocol. The board president is responsible for maintaining order. When he interrupted your public comments, he acted consistent with policy BCBI and the Format for Public Comments.

If you have any questions, please feel free to contact me.

**Attorney Norris' Letter Also Purports to Be Statements of Fact**

Attorney Norris does not qualify his letter as his own opinion (in fact Mr. Norris was not present at the meeting as he stated in open court). Rather Mr. Norris states he was authorized to make those statements as though the Board were making them ("The Board respectfully disagrees with your assertion…."). Mr. Norris states, as a fact, many things in the letter. These purported "facts" were provided to Ms. Gilmore as justification for Mr. Beveridge's actions.

**Facts are not Privileged**

Mr. Norris presented himself as a conduit – agent for – spokesperson for – the Board. As Board representative, Mr. Norris' status as an attorney is irrelevant when it comes to performing the business of that Board. He responded to a citizen's inquiry. Mr. Norris purports to know these facts about Mr. Beveridge's motives and mindset. Mr. Norris' letter cannot be ignored. Merely because Mr. Norris is an attorney does not insulate himself from the business aspects of directly responding to citizen inquiries. Mr. Norris own mindset is at play because of his letter.

Clearly, only Norris can testify as to his knowledge (or lack thereof) of Beveridge's state of mind that night. *See United States v. Dfazio*, 899 F.2d 626, 632 (7th Cir. 1990) (affirming disqualification of defense counsel prior to trial finding that "the parties could hardly have stipulated to what [the attorney] knew about [his client's] state of mind … since that knowledge was only in the ken of [the attorney]…").

### Attorney Client Privilege

The Court has directed the plaintiff to address the attorney-client privilege which purportedly might arise in admitting the letter and calling Mr. Norris as a witness to testify about the purported facts he sets out in that letter.  This calls for a bit a speculation on the part of the plaintiff as that burden rests with the defendants. One supposes that this privilege issue *might* arise upon the question as to how Mr. Norris acquired his knowledge about Mr. Beveridge's motives and state of mind stated in that letter.  If there was no communication with a client upon which Mr. Norris ascertained his facts this would not be an issue.  Mr. Norris could explain how or on what basis he came up with his statements.  And then the jury would be left with how or by what means Mr. Norris could credibly make those statements on January 24, 2022.  That could be admissible evidence of pretext.

If Mr. Norris claims he ascertained any of those facts from a communication with a client, the attorney client privilege would be subject to Mr. Norris demonstrating the privilege, and then why it was not waived by divulging the contents of the communication to Ms. Gilmore.  Not all communications involving attorneys are privileged. *Motley v. Marathon Oil Co.,* 71 F.3d 1547, 1550-51 (10th Cir. 1995) (the "mere fact that an attorney was involved in a communication does not automatically render the communication subject to the attorney-client privilege"). The privilege only protects confidential communications "made in order to obtain legal assistance from the attorney in his capacity as a legal advisor."  *In re Grand Jury Proc.,* 616 F.3d 1172, 1182 (10th Cir. 2010).  It is difficult to imagine a scenario

7

in which the defendant Beveridge would have had a communication with Mr. Norris prior to January 24, 2022, 9:23 A.M. in which Mr. Beveridge is soliciting legal advice about his actions.  But even that scenario conjures up a guilty mindset – just as Mr. Beveridge's should-I-have-done-that statement to the Board.  But even if that burden is met then comes the next hurdle: disclosure.

If Mr. Beveridge told Mr. Norris that he did what he did because Mr. Gilmore personally attacked Jim Randall, the substance of that conversation has been divulged by Mr. Norris. "Generally, disclosure of the substance of a privileged communication will result in waiver, whereas disclosure of the mere fact that such communication took place will not." *Brigham and Women's Hosp. Inc. v. Teva Pharms. USA, Inc.,* 707 F. Supp. 2d 463, 470 (D. Del. 2010).  *See In re Grand Jury Proceedings Oct. 12, 1995,* 78 F.3d 251, 254 (6th Cir.1996) (attorney-client privilege waived by voluntary disclosure of private communications by an individual or corporation to third parties).  And because Mr. Norris contends he was authorized by the Board, it is doubly waived by the conduct of the Board. *See In re von Bulow,* 828 F.2d 94, 104 (2d Cir.1987) (client may waive the privilege by conduct which implies a waiver of the privilege or a consent to disclosure).

Then related to that disclosure comes the sword/shield principle. *See Simmons Foods, Inc. v. Willis,* 191 F.R.D. 625, 633 (D. Kan. 2000) ("To be sure, there is authority that attorney-client communications cannot be used both as a sword and a shield...") *See Doe v. USD No. 237*, No. 16-2801-JWL-TJJ, 2019 WL 1925107, at *5-8 (D. Kan. Apr. 30, 2019).  If Mr. Norris obtained his knowledge from Mr. Beveridge or

some other client, he used that knowledge as a sword justifying Mr. Beveridge's conduct. The defendants cannot be permitted to then claim those communications are privileged becoming a shield to examination.

### Disqualifying Norris as Trial Counsel Will Not Work a Substantial Hardship on Any Defendant

None of the defendants will suffer a substantial hardship if Mr. Norris is disqualified as trial counsel. Defendants have been on notice since the first motion to disqualify was filed. Trial is not set until October 2023. The defendants unilaterally created this entirely foreseeable situation, and it is therefore only fair that the defendants bear the consequences of its choices. *See Novartis Pharm. Corp. v. Apotex Corp.,* No. 02-cv-08917, 2004 WL 1396257, at *5 (S.D.N.Y. June 22, 2004) ("that hardship will be the result of defendants' unilateral choice … might have to be disqualified was foreseeable from the outset of these proceedings…. it is only fair that defendants unilaterally bear the consequences"); *Real v. Bunn-O-Matic Corp.,* 195 F.R.D. 618, 626 (N.D. Ill. 2000). It was entirely foreseeable that Mr. Norris would be witness at trial as the author of the opinion of his letter made on behalf of the Board claiming to know Beveridge's state of mind and motivations and other reasons for the treatment of Ms. Gilmore prior to him entering an appearance in this case.

### Conclusion

Mr. Beveridge's state of mind and motives are directly at issue regarding liability and punitive damages under the Court's summary judgment ruling. Pretext is an issue which include post hoc rationalizations of which Mr. Norris' letter meets that definition. Plaintiff should be able to call the author of that letter to testify about

the factual contentions made in that letter about Mr. Beveridge's motives as well as the source of the facts that Mr. Norris claims he possesses. Allowing the Defendants to advance its "other" reasons as to why Ms. Gilmore's speech was terminated besides those stated by Mr. Beveridge and why she was removed from the meeting as untested or while relying upon Mr. Norris' *post hoc* reasoning while at the same time presenting Mr. Norris as a mere advocate would result in the intermingling of the roles of witness and advocate that KRPC 3.7 was precisely designed to prevent.

Mr. Norris should be prohibited from appearing as both witness and counsel at trial and the Court should grant this motion to disqualify.

/s/Linus L. Baker
Linus L. Baker, KS 18197
6732 West 185th Terrace
Stilwell, KS  66085-8922
Telephone:  913.486.3913
Fax:          913.232.8734
E-Mail: linusbaker@prodigy.net
Attorney for the plaintiff

Certificate of Service

The above was provided notice to all parties entitled to such notice pursuant to the Court's electronic filing system.

/s/Linus L. Baker
Attorney for the plaintiff