IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JENNIFER GILMORE,

    Plaintiff,

    v.

JOE BEVERIDGE, et al.,

    Defendants.

Case No. 2:22-cv-02032-HLT

## MEMORANDUM AND ORDER

Plaintiff Jennifer Gilmore was removed from a January 2022 Olathe School Board meeting while she was speaking during the public-comment portion. She brought a lawsuit alleging multiple claims, and her First Amendment viewpoint discrimination claim made it to trial. The jury agreed with Plaintiff after a four-day trial and found that Defendant Joe Beveridge (then President of the Board) engaged in viewpoint discrimination when he stopped her from speaking at the meeting.

Plaintiff now moves under 42 U.S.C. § 1988 for $317,140 in attorney's fees.[1] Defendants agree that Plaintiff is a prevailing party entitled to fees but contend $117,688 is a reasonable amount. The Court finds that Plaintiff vindicated an important right worthy of fees but her requested fees should be slightly reduced based on some billing issues and on her scattershot approach to parts of the litigation. The Court exercises its discretion and awards Plaintiff $259,233 in reasonable attorney's fees.

---

[1] Plaintiff seeks a lodestar of $400/hour for 792.85 hours, which is $317,140.

I.     **BACKGROUND**

The Court assumes familiarity with the facts but provides this summary for context. Plaintiff is a parent of a child who is a student in the Olathe School District. Beveridge was president of the Board in January 2022 and oversaw Board meetings. Plaintiff asked to speak at the January 2022 meeting. Policy BCBI was in place in January 2022 and addressed public comments at Board meetings ("Former Policy"). Speakers wanting to speak during public comment also had to fill out and sign a participation card ("Former Participation Card"), which Plaintiff did. Plaintiff began speaking at the January 2022 meeting, but Beveridge stopped her from speaking and had her removed from the building.

Plaintiff filed this case on January 23, 2022, and sought injunctive relief. Doc. 1; Doc. 5. Defendants issued a revised policy and participation card in April 2022 ("Revised Policy" and "Revised Participation Card"), which mooted the original motion for injunctive relief. Doc. 26; Doc. 31. Plaintiff filed a new motion for injunctive relief. Doc. 33. The Court denied injunctive relief after full briefing and a hearing. The Court held that Plaintiff did not currently face any future injury, irreparable harm, or credible threat of enforcement under the Former Policy and Former Participation Card because those policies are no longer in effect. Doc. 70 at 8. The Court then rejected her arguments on the Revised Policy and Revised Participation Card. *See generally id.* at 9-19.

The Court resolved early dispositive motions.  The Court dismissed some defendants and some claims. Doc. 96. The parties engaged in discovery. Plaintiff moved to disqualify defense counsel, and the Court denied the motion. Doc. 118. Defendants moved for summary judgment at the close of discovery. The Court denied summary judgment on Plaintiff's First Amendment viewpoint discrimination claim stemming from the Former Policy and Former Participation Card

and on her claim for punitive damages against Beveridge. Doc. 119. The Court dismissed some of her remaining claims as moot or for lack of standing and granted summary judgment to Defendants on her remaining claims. *Id.*

Plaintiff renewed her motion to disqualify defense counsel Michael Norris. Doc. 121. Norris voluntarily recused and substitute trial counsel entered an appearance. Doc. 128. The case proceeded to a four-day jury trial in October 2023. Plaintiff asked for nominal damages and punitive damages on her viewpoint discrimination claim. Plaintiff did not call Norris at trial. The jury sided with Plaintiff on the merits, awarded nominal damages, and denied punitive damages. This motion followed. Plaintiff seeks $317,140 for the 792.85 hours performed by her attorney Linus Baker.

## II.    ANALYSIS

Plaintiff seeks fees under 42 U.S.C. § 1988. This statute states that a court may in its discretion allow the prevailing party in a § 1983 case a reasonable attorney's fee as part of the costs. *Id.* The parties agree that Plaintiff is a prevailing party based on the jury's verdict on her § 1983 viewpoint discrimination claim and award of nominal damages.[2] But they dispute the amount of a reasonable attorney's fee.

The Court determines the amount of a reasonable attorney's fee by completing two steps. *Valdez v. Macdonald*, 66 F.4th 796, 835-36 (10th Cir. 2023). First, the Court must calculate the lodestar, which is the product of the reasonable hourly rate and the number of hours reasonably spent on the litigation. *Id.* at 836. Second, the Court determines whether an adjustment to the lodestar is appropriate. *Id.*

---

[2]    Defendants are not contesting an award of fees, but they contest the significance of the results.

A.      **Lodestar**

The Court starts with the lodestar and determines the product of the reasonable hourly rate and the reasonable number of hours.

1.      **Reasonable Hourly Rate**

The reasonable hourly rate is the "prevailing market rate for similar services by lawyers of reasonably comparable skill, experience, and reputation in the relevant community including experience in civil rights or analogous litigation." *Id.* (internal quotation and citation omitted). Plaintiff contends that $400/hour is a reasonable hourly rate for Baker. She explains that Baker is a 1996 graduate of the University of Missouri-Kansas City law school and has practiced law for over 25 years. He is licensed in state and federal court, and he has represented many clients on First Amendment claims. Plaintiff offers Baker's affidavit, which states that $400/hour "is the rate I have been charging since 2020" and notes that this rate is within the published rates for lawyers in the Kansas City market. Doc. 189-1 at 8; Doc. 189-3 (outlining area billing rates). Defendants quibble with this rate but relegate any actual attack to a footnote, which is not the proper presentation for preserving an argument. *See In re EpiPen Marketing*, 2021 WL 2577490, at *62 n.31 (D. Kan. 2021) ("Our Circuit instructs that arguments made in a perfunctory manner, such as in a footnote, are waived." (internal quotation and citation omitted) (collecting cases)).

The Court finds that $400/hour is a reasonable hourly rate for Plaintiff's counsel based on his credentials and the contingency-fee nature of his representation. First, Plaintiff has offered evidence to support this hourly rate. Second, this rate is comparable to the rates awarded to other civil rights attorneys in this market in contingency-fee cases with comparable (and at times less) skill and experience. *See Ross v. Huhtamaki, Inc.*, No. 20-cv-2208, Doc. 93 at 4-6 (D. Kan. 2022) (awarding $485/hour and $400/hour for civil rights attorneys with less experience); *Ross v. Pentair*

*Flow Techs., LLC*, 2021 WL 5493072, at *2-3 (D. Kan. 2021) (awarding $375/hour in a civil rights case to an attorney with less experience). Third, this rate is consistent with the hourly rates charged by civil rights attorneys throughout this market based on the Court's own knowledge and experience.

### 2.   <u>Reasonable Number of Hours</u>

The Court next determines the hours reasonably spent by counsel litigating this case.  The Court must look at three factors: (1) whether there are sufficiently reliable time records that show the time Baker allotted for each task, (2) whether Baker exercised billing judgement, and (3) whether the hours Baker expended on each task were reasonable. *Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1250 (10th Cir. 1998).

### a.   <u>Sufficiently Reliable Time Records</u>

Plaintiff submits Baker's billing records, which span 73 pages. Defendants contend Baker's billing records are insufficient because (1) he did not contemporaneously record his time, and (2) some entries are too vague. The Court disagrees on the first point but agrees on the second point.

First, Defendants argue that Baker's records are insufficient because he did not contemporaneously record his time. They balk at Baker's assertion that he kept time entries in a Word document that he converted to an Excel spreadsheet with formulas after trial. Plaintiff does not run from this fact – indeed the billing records confirm that Baker took precisely that approach and did not bill for the time associated with converting the records. *See* Doc. 189-2 at 74 ("Staff administrative tasks; conversion of word billing to excel with formula verification; review billing events."). And the Court does not perceive a per se problem with this approach. Baker's method of initially recording time in a Word document may be different, but attorneys keep time in myriad ways. Some attorneys have time management systems while others keep time by hand. Some

attorneys use an Excel spreadsheet, some use an email, and some use a Word document. There is no single "right way" to do it so long as the entries are reliable.

Defendants also challenge the contemporaneous nature of his records because some entries are inconsistent with other facts. Defendants note as an example that Baker bills 8.0 hours for each trial day even though the Court's minute sheets states that trial took less than seven hours some days. But these minor issues do not undermine Baker's declaration about his method of contemporaneously keeping time in a Word document that he later converted to an Excel spreadsheet. These entries may not be errors or, if errors, these entries may have an innocent explanation or simply be a minor oversight. Baker's billing of 8.0 hours per trial day is not particularly troubling given that most days took close to that amount of time and given that his records indicate little additional time billed on those dates.[3]

Overall, any attorney who has been required to bill time and review it prior to client submission knows that attorneys keep time in different ways, that the time spent reviewing, checking, and editing entries can be substantial, and that errors sometimes creep in despite reasonable and good-faith efforts to ensure accuracy. The Court is not troubled by Baker's approach or the identified entries and does not agree with Defendants that these issues call into question the overall contemporaneity or reliability of Baker's records.

Second, Defendants argue that Baker's billing records are insufficient because entries totaling 9.45 hours are too vague. The Court agrees that Baker's narrative descriptions for the

---

[3]    Defendants also find suggestive the large number of 0.05 and 0.1 hour entries for email correspondence. The Court does not share Defendants' suspicions. Terse, high-volume email correspondence has become endemic in the practice of law. Baker's time entries reflect that reality. Some emails take longer than six minutes to read or to draft but many do not. And, while Baker could surely have grouped daily correspondence by subject matter in his bills, his decision not to is not unreasonable. Nor is it evidence that he has misrepresented to the Court how his billing records were prepared. Billing for each item of correspondence is consistent with the requirement that billing records be sufficiently detailed for the Court to understand how time was allocated to each task. *See Case*, 157 F.3d at 1250. The Court also notes that several emails are exchanged with defense counsel, and specific emails are not challenged as not existing or as taking less than the billed time.

highlighted items in Doc. 190-2 are inadequate. Adequate billing narratives explain how an attorney's time was allocated to specific tasks because not everything an attorney does on a case is compensable as legal work. Thus, an attorney's billing narratives should be detailed enough for the Court to discern whether those tasks were properly billed as legal work. *Case*, 157 F.3d at 1250. The Court has reviewed the billing records Baker submitted to support his fee request. The billing narratives in these records largely satisfy this requirement. But Defendants correctly identify several billing narratives that are too vague to adequately describe the tasks performed and whether those tasks are properly billed out as legal work. The Court agrees that a 9.45-hour reduction for the vague entries identified in Doc. 190-2 is appropriate.

### b.    Billing Judgment

The Court turns to billing judgment. Billing judgment involves "winnowing the hours actually expended down to the hours reasonable expended." *Case*, 157 F.3d at 1250. This part of the lodestar analysis exists because "[h]ours that are not properly billed to one's <u>client</u> also are not properly billed to one's <u>adversary</u> pursuant to statutory authority." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983) (quotations and citations omitted). Time spent on non-billable or duplicative work is not recoverable no matter how well documented or how reasonable the amount of time spent on the work may have been.

Plaintiff notes that Baker voluntarily excluded 143.15 hours of professional time (e.g., initial case research, emails with Plaintiff, some tasks related to Kiger and McMullen, etc.). *See* Doc. 189-2 at 74. But Defendants contend the Court should exclude time for three additional categories: (1) time spent on excludable clerical and media-related work, (2) time spent on irrelevant work such as the motion to disqualify, and (3) time spent on KORA requests and other cases. The Court finds that some of this time is excludable for lack of billing judgment.

First, Defendants identify 20.95 hours spent on non-compensable administrative or clerical work. The Court agrees that the identified entries are for time spent on clerical or administrative tasks and deducts 20.95 hours.

Second, Defendants seek to deduct the time Baker spent on the motion to disqualify Norris. Defendants note that Baker did not ultimately end up calling Norris as a witness in the case, which was the basis for the motion to disqualify. They thus argue the time spent seeking to disqualify him was unnecessary. The Court disagrees. Just because Baker did not call Norris, does not mean the time he spent on the motion was not compensable. *Cf. Barvick v. Cisneros*, 1997 WL 417994, at *9 (D. Kan. 1997) (explaining that plaintiff's attorney could recover preparation fees for deposition that ultimately did not occur). The question is whether the expenditure of time was reasonable when the work was done. *See Aquilino v. Univ. of Kan*, 109 F. Supp. 2d 1319, 1326 (D. Kan. 2000). It was. Plaintiff's decision to not call Norris as a witness does not prevent Baker from receiving fees related to the motion to disqualify him. These fees are recoverable.

Third, Defendants seek to deduct the time Baker spent on KORA requests and on working on other cases. Defendants initially contend that Plaintiff may not be compensated for KORA requests because that right is circumscribed by the statute and because Baker pursued KORA requests after the close of discovery. It appears that Defendants challenge about 1.2 hours for KORA requests. This amount is negligible in the overall scheme of this case and sufficiently offset by Plaintiff's voluntary reduction of over 143 hours even if Defendants are ultimately correct on the legal issue, which the Court does not decide.[4] Defendants next contend that Plaintiff can't

---

[4]   Plaintiff used KORA to get the amount defense counsel had billed for work on this case. Plaintiff wanted to use this amount as a basis for a punitive damage award (e.g., Defendants spent this much money litigating the case rather than apologizing to Plaintiff and should be punished by this amount). The Court never reached this issue or whether this was an appropriate theory because the jury did not find a basis for punitive damages. It is unclear whether Plaintiff requested this information from Defendants before pursuing KORA and, if so, the basis for Defendants refusing to produce it.

recover for time Baker worked on other cases. True enough. But Plaintiff explains that the challenged entries relate to work on this case – notifying Thad Snider (a witness in this case who Baker also represents in another case) about developments and dates, emailing Plaintiff and Snider on overlapping issues, and researching the docket or opinions in similar cases to assist with strategy. This seems a logical explanation based on this Court's review of the time entries, its knowledge of this case, its observations of Snider's testimony at trial, and its own review of some of the identified cases during the pendency of this lawsuit. These fees are recoverable.

### c.    Hours Expended

The final step for the lodestar requires the court to look at the hours expended on each task to determine if those hours are reasonable. *Case*, 157 F.3d at 1250. Defendants do not lodge a separate challenge to the reasonableness Baker's time entries. The Court has conducted its own independent review of Baker's records and finds that the time billed for each task is reasonable.

### 3.    Lodestar Calculation

Ultimately, the Court finds that $400/hour is a reasonable hourly rate and that 30.4 hours should be deducted. The Court thus calculate the lodestar as:

$400/hour * (792.85 hours - 30.4 hours) = $304,980.00

### B.    Lodestar Reduction

The Court now must determine whether any adjustments to the lodestar are appropriate. The lodestar calculation "does not end the [fee award] inquiry, and other considerations, including the results obtained and the extent to which a party prevailed, may lead the district court to adjust the fee upward or downward." *Valdez*, 66 F.4th at 836 (internal quotations omitted) (quoting *Hensley*, 461 U.S. at 434). This analysis is—by its nature—qualitative. *Id.* But the Court must

supply enough reasoning to satisfy the parties that it didn't simply "eyeball" the lodestar and adjust it upward or downward accordingly. *Id*. at 836-37.

Plaintiff seeks an award of the unadjusted lodestar while Defendants urge the Court to apply a substantial reduction to account for Plaintiff's "limited success" at trial. Two factors guide the Court's discretion when a reduction in the lodestar is sought based on a prevailing party's partial or limited success: (1) whether the plaintiff's successful and unsuccessful claims were related, and (2) whether the plaintiff's level of success makes the hours reasonably expended a satisfactory basis for the award. *Hensley*, 461 U.S. at 434.

Defendants start with the first *Hensley* factor and note the unsuccessful KOMA claim. They argue some reduction is warranted because Plaintiff's KOMA claim was "legally distinct" from her viewpoint discrimination claim. Defendants do not attempt to parse the separate factual bases for Plaintiff's KOMA and viewpoint discrimination claims. Nor could they. Both claims stem from Plaintiff's removal from the Board meeting. This common core of facts is enough in this case for the Court to regard this claim as related. *Id.* (related claims are those that "involve a common core of facts or [are] based on related legal theories").

Defendants turn to the second *Hensley* factor and argue that a substantial reduction is warranted because Plaintiff's victory was merely "de minimis" or "technical."[5] Defendants initially focus on the nominal nature of Plaintiff's monetary award and her failure to recover

---

[5]     Defendants borrow the terms "de minimis" and "technical" from Justice O'Connor's concurrence in *Farrar v. Hobby,* 506 U.S. 103, 117-22 (1992) (O'Connor, J., concurring). But the point of Justice O'Connor's concurrence is that the lodestar is not a good measure of a reasonable fee award when a plaintiff's success is only "technical" or "de minimis." These victories should result in either no fees or minimal fee awards because an award of the lodestar would be unjust. *Id.* at 117-18. Here, Defendants agree that Plaintiff's success on her viewpoint discrimination claim should entitle her to a non-trivial amount of fees. This belies their characterization of Plaintiff's success as "de minimis" or "technical." Defendants' invocation of *Farrar* appears to serve an atmospheric purpose.

punitive damages.[6] The Court sees this case differently from Defendants. As the Court stated in its summary judgment order:

> The prohibition on viewpoint discrimination is black letter law: viewpoint discrimination by the government is deeply antithetical to the Constitution and our nation's long-standing values. The government may not pick and choose what viewpoints people are allowed to express. And governmental actors—including members of school boards—may not pick and choose what viewpoints they must listen to during the public comment portion.

Doc. 119 at 11 (internal citations omitted). Preserving the boundaries of this prohibition is most important when, as here, the views are controversial and unpopular. The jury's verdict vindicated Plaintiff's right to speak at a Board meeting without fear of encountering discrimination against the views she expressed.[7] To be sure, Plaintiff's failure to recover punitive damages can be relevant to a reduction in her fee award. *See, e.g.*, *Spanish Action Comm. of Chicago v. City of Chicago*, 811 F.2d 1129, 1134-35 (7th Cir. 1995). But it does not mean that her victory was "de minimis" or merely "technical." After all, much of the point behind fee-shifting under § 1988 is that monetary awards may not serve to adequately address constitutional wrongs and that, despite clear public benefits, too few civil rights cases would be brought absent the ability to recover fees:

> Although private parties looking only to their own interests would not invest more in litigation than the stakes of the case, the combination of self-interest with the American Rule on the allocation of legal costs means that people can get away with small offenses. A two-day suspension may be unconstitutional, but a few hours of legal time costs more than the wages lost. Section 1988 helps to discourage petty tyranny. Awarding the full cost of litigation, which looks excessive in a single case, is sensible because

---

[6]   The Court notes that Plaintiff did not seek compensatory damages in connection with her First Amendment viewpoint discrimination claim. She only requested nominal and punitive damages.

[7]   Defendants attempt to refocus the verdict by arguing that Board presidents in the future will "be sure to recite the correct standard should a future speaker be cut off for violating that standard." Doc. 190 at 10. But this argument misstates the jury's verdict. The jury was not asked whether Beveridge recited the correct or incorrect standard. They were asked whether he engaged in viewpoint discrimination, and they unanimously found that he did. Doc. 181 at 1 (finding that "Joe Beveridge engaged in viewpoint discrimination when he stopped Plaintiff from speaking" in January 2022).

> it aids in the enforcement of rules of law. Put another way: Monetary
> awards understate the real stakes. Judicial decisions have effects on
> strangers.

*Barrow v. Falck*, 977 F.2d 1100, 1103-04 (7th Cir. 1992) (internal citation omitted); *see also Farrar*, 506 U.S. at 122 (O'Connor, J., concurring) ("[Section 1988] is a tool that ensures the vindication of important rights, even when large sums of money are not at stake, by making attorney's fees available . . . ."); *Hyde v. Small*, 123 F.3d 583, 585 (7th Cir. 1997) ("[T]he cumulative effect of petty violations of the Constitution . . . may not be petty, and . . . the mere fact that a suit does not result in a large award of damages or the breaking of new constitutional ground is not a good ground for refusing to award attorneys' fees.").

Here, the public benefits of Plaintiff's case against Defendants are not simply hypothetical or theoretical. The Board revised the participation card speakers must fill out in response to Plaintiff's lawsuit. Defendants contend the change is "cosmetic," but the fact remains that changes occurred after filing. And Defendants' counsel moved for leave to interview members of the jury because they "have occasion to advise multiple school districts in the Kansas City region regarding First Amendment principles during public comment at board meetings and thus believe it would be beneficial to understand jurors' perception about the facts that were decisive in reaching their verdict." Doc. 182. The rights Plaintiff vindicated and the clear public benefits created by her case are significant and substantial. The Court thus disagrees with Defendants that Plaintiff's success was "de minimis" or merely "technical."

The Court rejects Defendants' characterization of Plaintiff's success on her viewpoint discrimination claim as "de minimis" or "technical." But the Court does agree with Defendants that some reduction in the lodestar is warranted under *Hensley*'s second factor. Defendants argue a reduction is appropriate because of the large number of unsuccessful claims Plaintiff pursued.

12

And here, Defendants have a point.[8] "Congress [did] not authorize[ ] an award of fees whenever it was reasonable for a plaintiff to bring a lawsuit or whenever conscientious counsel tried the case with devotion and skill." *Hensley*, 461 U.S. at 436. Thus, "[a] reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole." *Id*. at 440. Section 1988 exists in part to remove disincentives under the American Rule to bringing meritorious civil rights claims because "the public as a whole has an interest in the vindication of the rights conferred by the statutes enumerated [in it] over and above the value of a . . . remedy to a particular plaintiff." *City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986) (citations and quotations omitted). On the other hand, excessive litigation of unmeritorious claims is of dubious public value and not what fee-shifting statutes like § 1988 are intended to encourage. *See generally, City of Burlington v. Dague*, 505 U.S. 557, 563 (1992) (discussing contingency enhancements under fee-shifting statutes and observing that the "indiscriminate[ ] encourag[ement] of nonmeritorious claims" is socially costly and "an unlikely objective" of these statutes).

This case, when viewed as a whole, falls between these two poles. Plaintiff's viewpoint discrimination claim is an example of why we have § 1988. Absent fee-shifting, Plaintiff's claim may not have been brought in the first place. But, as Defendants rightly point out, this single successful claim was brought alongside an excess of claims that unnecessarily complicated and overburdened the case. Many of these claims were not meaningfully developed in the space between the preliminary injunction hearing and Plaintiff's opposition to Defendants' motion for summary judgment. Nor was there an effort to respond to many of the concerns the Court expressed early in the case about the merits of certain of Plaintiff's claims. The arguments advanced to

---

[8]  Defendants also register complaints about Baker's litigation tactics and argue that Baker lacked "meaningful expertise" and that the lodestar should be significantly reduced as a result. *See* Doc. 190 at 14-15. Baker's level of experience is reflected in Baker's hourly rate. But, to the extent this argument also implicates Baker's scattershot approach to certain aspects of the case, that concern is addressed here.

support multiple of Plaintiff's unsuccessful claims were essentially identical at these two points in the litigation. Plaintiff had an opportunity to jettison unmeritorious claims and focus the litigation early on but did not. A reasonable fee under § 1988 should reflect of Plaintiff's success in the case. *Hensley*, 461 U.S. at 438. It shouldn't create an attorney windfall. *City of Riverside*, 477 U.S. at 580. Nor should it incentivize an overly complicated approach to straightforward litigation. The Court therefore applies a 15% reduction to the lodestar. This adequately balances the significance of Plaintiff's success on the merits against the occasionally scattershot way in which the case was prosecuted. The Court awards $259,233 in attorney's fees.

THE COURT THEREFORE ORDERS that the motion for fees (Doc. 189) is GRANTED IN PART. The Court awards Plaintiff $259,233 in reasonable attorney's fees.

IT IS SO ORDERED.

Dated: April 4, 2024                              /s/ *Holly L. Teeter*
                                                  HOLLY L. TEETER
                                                  UNITED STATES DISTRICT JUDGE